**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| DENICE MARTIN and | ) | |
| QUINTON MARTIN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:18-CV-121 |
| | ) | |
| NOBLE COUNTY SHERIFF'S DEPT., | ) | |
| ALLEN COUNTY SHERIFF'S DEPT., | ) | |
| INDIANA STATE POLICE DEPT., | ) | |
| DOUG HARP, NOBLE COUNTY SHERIFF, | ) | |
| SGT. JOE HUTSELL, SGT. TIM DOLBY, | ) | |
| DET. SHAWN DUNAFIN, DET. MICHAEL | ) | |
| CARROLL, LT. R. CORY CULLER, | ) | |
| SGT. JOHN R. PETRO, NOBLE COUNTY | ) | |
| PROSECUTOR'S OFFICE, and | ) | |
| UNKNOWN OFFICERS, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

This matter is before the Court on several pending motions, including a motion for

summary judgment by Defendants Noble County Sheriff's Department, Doug Harp, Joe Hutsell,

and Shawn Dunafin (the "County Defendants") (ECF No. 138); a motion for summary judgment

by Defendant Allen County Sheriff's Department (ECF No. 140); a motion for summary

judgment by Defendants Michael Carroll, R. Cory Culler, Tim Dolby, John R. Petro, Indiana

State Police Department, and Noble County Prosecutor's Office (the "State Defendants") (ECF

No. 147); and two motions to strike filed by the County Defendants (ECF No. 175 and 176). **For**

**the reasons discussed below, the motions to strike are GRANTED and the motions for**

**summary judgment are GRANTED as to all of the Plaintiffs' claims against all named**

**defendants. The Plaintiffs' purported claims against "Unknown Officers" are DISMISSED**

**WITH PREJUDICE pursuant to Federal Rule 41.**

**I. Background.**

On August 20, 2017, the Noble County Sheriff's Department, responding to a 911 call, found the body of 39-year-old Suzanne M. Moore lying on a county road. Moore had been shot in the head with a high caliber handgun and her body deposited on the road, which was closed to traffic at the time due to bridge construction. Detective Shawn Dunafin of the Noble County Sheriff's Department, and Officer Michael Carroll of the Indiana State Police, investigated the crime and learned from Suzanne Moore's parents that Suzanne had been involved in a relationship with Tracey Martin, and that Ms. Moore had spent time with Tracey Martin at his mother's (Denice Martin's) house at 214 East Masterson Avenue in Fort Wayne.[1] On August 21, 2017, Detective Dunafin submitted an Affidavit in Support of Issuance of Search Warrant to search Denice Martin's home in Fort Wayne as part of the investigation into Moore's murder. Dunafin Aff. for Warrant (ECF No. 160, pp. 16-19). Judge Robert Kirsch of the Noble Superior Court signed the search warrant at 9:35 p.m. on that same day. The warrant, directed to "Sheriff Doug Harp, Noble County [and] Lieutenant R. Cory Culler, Indiana State Police or any officer acting under their command," authorized those two law enforcement agencies "to search the [Martin home] for evidence tending to suggest the manner and cause of death of Suzanne Moore, including but not limited to physical, biological, and other types of evidence including personal property to include purse and contents relating to personal identification of Suzanne Moore, i.e., driver's license, credit cards, bank account information, etc., cellular telephone, and a large

---

[1] Tracey Martin is referred to in many of the Defendants' pleadings as "Tracy," but according to his affidavits his name is spelled "Tracey."

2

caliber firearms [sic], which may be evidence of the commission of a homicide. You are further ordered to seize such property, or any part thereof, found on such search, and make a return to this court without unreasonable delay after the execution of said search." County Defendants' Memorandum in Support of Summary Judgment, Exh. C, Search Warrant (ECF No. 139-8). Minutes after the warrant was issued, the Indiana State Police Emergency Response Team executed the warrant at Denice Martin's home. The ISP handcuffed Denice Martin and her son Quinton (who is autistic) and removed them from the home. After the home was "secured," officers from the Noble County Sheriff's Department and officers from the Indiana State Police entered the home to conduct a search pursuant to the warrant. Officers seized property from the home, including handguns and ammunition, drugs and drug paraphernalia, a laptop computer, a cell phone, and several items belonging to Suzanne Moore, including her Social Security card and other personal belongings. The officers also towed two vehicles from the property. The Plaintiffs do not dispute that the officers had a valid warrant.[2] However, they claim that when the police entered their home they used excessive force in detaining them. They also claim that the officers damaged some of their property and seized property they should not have (notwithstanding the valid warrant).

The Plaintiffs filed this lawsuit on May 7, 2018, stating that it "is a civil action authorized by 42 U.S.C. section 1983 to redress the deprivation, under color of state law, of rights secured by the constitutions [sic] of the United States." Complaint (ECF 1), p. 2. In the Complaint, Denice Martin recounts the incident as follows:

---

[2] The Plaintiffs do attempt to raise an issue regarding the validity of the warrant for the first time in their responses to summary judgment, but the attempt fails for reasons the Court will address below.

> On or about the 22ⁿᵈ day of August, around 10pm I was laying in my bed and I heard a loud boom. The front door was kicked in and I saw a lot of flashing lights and was hearing a lot of commotion going on from the officers commands and them yelling while making entry to the home with their guns drawn. I was thrown to the ground face first by several unknown officers, who began giving me commands and shoved my head hard into the floor when I did not respond to him or his questioning.

*Id.*, p. 3 (verbatim). Ms. Martin alleges that the officers used excessive force against her and Quinton, including striking them both and screaming expletives at them. She further alleges as follows:

> I was detained and held against my will for over several hours handcuffed, no shoes on, no phone, helpless and was not allowed back into the house until like 5am. While in the backseat [of a police vehicle], I saw several officers go inside the house and come outside the house, with numerous properties and personal material was taken from the house. The officers were coming out of the house with boxes, safes, bags, computers and clothing items in hand, which at no time was a "search warrant" shown to me or presented for my observation as to the reason "why" they were there searching and breaking into my home.

*Id.*, pp. 3-4 (verbatim). Ms. Martin also claims that "[p]ersonal property, computers, computers data and documents of my son Anthony who is incarcerated and my brother Tony personal property was also 'seized' by the officers, which I was storing for them in separate rooms upstairs in the house. They also seized my laptop computer along with other personal items. There is major damage to the front door, sofa, carpet, and couch from the forceful and reckless entry to the home, and the reckless searching for unknown items, which needs repaired immediately." *Id.*, p. 4. Ms. Martin, on behalf of herself and her son Quinton, is "suing for 92.7 million dollars (U.S. currency), and all medical related bills, out-of-pocket expense, pain and suffering, damages, etc., al." *Id.*, p. 8.

The Plaintiffs named as defendants the following individuals and entities:

4

1) The Indiana State Police Department;
2) Indiana State Police officers Michael Carroll, Tim Dolby, R. Cory Culler, and John R. Petro (federal claims dismissed on September 4, 2018);
3) The Noble County Prosecutor's Office;
4) The Noble County Sheriff's Department;
5) Noble County Sheriff Doug Harp;
6) Noble County Sheriff's Department Sergeant Joe Hutsell;
7) Noble County Sheriff's Department Detective Shawn Dunafin;
8) The Allen County Sheriff's Department; and
9) The Fort Wayne Police Department (terminated on December 17, 2019).[3]

In addition to suing a long list of individuals and governmental entities, the Plaintiffs'

Complaint appears also to allege a host of claims, including constitutional claims (they cite the

First, Fourth, Fifth, and Fourteenth Amendments), a claim under the ADA, and apparent state

law tort theories of "harassment" and "retaliation" stemming from alleged events that occurred

after the events of August 21-22, 2017. The Plaintiffs' claims and the legal basis for each of them

are not clearly delineated in the Complaint, but one thing is clear: all of the Plaintiffs' federal

claims, regardless of their legal foundation, arise from the initial securing of the Martin home and

the handcuffing and detention of Denice and Quinton. The State Defendants–Michael Carroll,

Tim Dolby, R. Cory Culler, John R. Petro, Indiana State Police Department, and Noble County

Prosecutor's Office–summarize the Plaintiffs' claims as follows:

> Plaintiffs assert claims under 10 (ten) separate counts and as against all
> Defendants. These counts, however, tend to run together in their assertion of
> various U.S. and Indiana Constitutional violations, tort claims, and an American's
> with Disabilities Act ("ADA") claim. Count 1, specifically, alleges violations of
> the Plaintiffs' rights under the 1st, 4th, and 14th Amendments to the U.S.
> Constitution and violations of Article 1 of the Indiana Constitution. [Id. at 5.]
> Counts 2, 3, 4, and 5 restate claims for violations of the 4th Amendment by
> asserting claims for illegal search (Count 2), excessive force (Count 3), and illegal
> seizures (Counts 4 and 5). [Id. at 5-6.] Count 6 asserts an equal protection
> violation and Count 7 asserts the Defendants violated the ADA. [Id. at 6-7.] Count

---

[3] The Plaintiffs also named "Unknown Officers" as defendants. More on this later.

8 appears to assert a *Monell* failure to train claim while Counts 9 and 10 assert claims of harassment, retaliation, and damage to personal property under theories of tort.

State Defendants' Memorandum in Support of Motion for Summary Judgment (ECF 148), p. 3.

The County Defendants–Noble County Sheriff's Department, Sheriff Doug Harp, Sgt. Joe

Hutsell, and Lt. Shawn Dunafin–summarize the Plaintiffs' claims as follows:

> Plaintiffs bring several claims against these Defendants, including: (1) unreasonable search and seizure; (2) excessive force; (3) violations of the First Amendment; (4) false arrest; (5) equal protection violations; (6) violations of the Americans with Disabilities Act (ADA); (7) failure to train; (8) failure to intervene; (9) harassment and retaliation after the search; (10) property damage because of the search; and (11) municipal liability under Section 1983.

County Defendants' Memorandum in Support of Motion for Summary Judgment (ECF No. 139), p. 1.

The third motion for summary judgment now before the Court was filed by the Allen County Sheriff's Department. Motion for Summary Judgment (ECF No. 140).  While the State Defendants and the Noble County Defendants move for summary judgment based on several legal arguments, the Allen County Sheriff's Department seeks summary judgment for one primary reason: no officer from the Department was present or participated in the search of the Plaintiffs' home. Memorandum of Law in Support of the Allen County Sheriff's Department's Motion for Summary Judgment (ECF No. 141), p. 1.

The Plaintiffs filed a host of pleadings and affidavits in opposition to the motions (many of which are duplicative or redundant). The parties' filings, all of which the Court has read and considered, are as follows:

1) Motion for summary judgment and memorandum in support by Noble County Defendants Dunafin, Hutsell, Harp, and Noble County Sheriff (ECF Nos. 138, 139). The Plaintiffs filed responses in opposition to this motion, including: a) "Plaintiffs' Exhibits & Things Volume I

Noble Co. Sheriff's Dept. Doug Harp; Sgt. Joe Hutsell and Lt. Shawn Dunafin" [all sic] (ECF No. 159); b) "Plaintiffs' [Response] to Defendants' Summary Judgment [Noble Co. Defendants] F.R.C.P. 56©" [all sic] (ECF No. 162); and c) "Plaintiffs' [Response] to Defendants' Summary Judgment [Noble Co. Defendants]" [all sic] (ECF No. 163). The Noble County Defendants filed a reply brief (ECF No. 174). The Noble County Defendants also filed a sur-reply (ECF No. 186). This sur-reply was in response to two filings made by the Plaintiffs: "Plaintiffs' [Additional] Affidavits and Evidence in Support of Summary Judgment[4] [Noble Co. Defendants]" [all sic], which appears at ECF No. 177; and "Plaintiffs' [Additional] Affidavits and Evidence in Support of Summary Judgment [State Defendants]" [all sic], which appears at ECF No. 178. These two filings are similar in content (identical in many ways). While the two filings appear to be addressed to different Defendants–the first a supplemental response to the Noble County Defendants and the second a supplemental response to the State Defendants–the Noble County Defendants discuss both filings in their sur-reply. The Noble County Defendants also filed a Supplemental Designation of Evidence (ECF No. 184), which included two incident reports authored by State Defendants Carroll and Dolby. This filing was made six days after the State Defendants themselves filed the same two reports in their own supplemental discovery response (see following paragraph).

2) Motion for summary judgment and memorandum in support by State Defendants Carroll, Dolby, Culler, Indiana State Police, Noble County Prosecutor's Office, and Sgt. John R. Petro (ECF Nos. 147, 148). The Plaintiffs filed responses in opposition to this motion, including: a) "Plaintiffs' Exhibits & Things Volume II Indiana State Defendants Sgt. Tim Dolby, Det. Michael Carroll Lt. Cory Culler and Noble Co. Prosecutor In Support of Summary Judgment" [all sic] (ECF No. 160); b) "Plaintiffs' [Response] to Defendants' Summary Judgment [State Defendants] F.R.C.P. 56©" [all sic] (ECF No. 167); c) "Plaintiffs' [Response] to Defendants' Summary Judgment [State's Defendants]" [all sic] (ECF No. 168); d) "Plaintiffs' [Designation] of Evidence and Affidavits in Support of Summary Judgment" [all sic] (ECF No. 169); e) Affidavit of Denice Martin (ECF No. 170); f) Affidavit of Tracey L. Martin (ECF No. 171); and g) "Plaintiffs' [Additional] Affidavits & Evidence in Support of Summary Judgment [State Defendants]" [all sic] (ECF No. 178). The State Defendants filed a reply brief (ECF No. 182). The Indiana State Police also filed a Supplemental Response to Plaintiff's [sic] Request for Production of Documents (ECF No. 180) This filing included the two incident reports authored by Carroll and Dolby, which the State Defendants had previously contended were privileged and therefore not subject to discovery. The Plaintiffs objected to this supplementation of discovery and filed "Plaintiffs' [Objection] Opposition to State Defendants Supplemental Responses & Sanctions, Bad Faith Filings/Improper Discovery" [all sic] (ECF No. 187), to which the State Defendants filed a response (ECF No. 190). The Plaintiffs did not file a reply brief. As the title of their objection implies, the Plaintiffs contend that the State Defendants' post-discovery disclosure of this evidence was in bad faith and warrants the imposition of sanctions against

---

[4] Several of the Plaintiffs' responsive pleadings include in the caption the phrase "in support of summary judgment." They are all, however, responses in *opposition* to the Defendants' motions for summary judgment.

them. The Court addresses this sidebar issue below.

3) Motion for summary judgment and memorandum in support by Allen County Sheriff's Department (ECF Nos. 140, 141). The Plaintiffs filed a response in opposition titled "Plaintiffs' Exhibits & Things Volume III Allen Co. Sheriff's Dept. [John Doe; Unknown Officers] in Support of Summary Judgment" [all sic] (ECF No. 161). The Allen County Sheriff's Department filed a reply brief (ECF No. 172).

4) Two motions to strike filed by the Noble County Defendants (ECF Nos. 175 and 176), in which they ask the Court to strike all or portions of affidavits submitted by the Plaintiffs (Denice Martin's affidavit at ECF No. 165 and Tracey Martin's affidavit at ECF No. 166). The Plaintiffs did not file responses to these two motions.

**II. Standard of Review.**

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56©; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *See id.* at 255. However, neither the "mere existence of some alleged factual dispute between the parties," *id.* at 247, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000).

Summary judgment is not a substitute for a trial on the merits nor is it a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. *See Shields Enterprises, Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992); *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir. 1989). However, if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. *See Celotex*, 477 U.S. at 322; *Ziliak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003). "[S]peculation and conjecture" also cannot defeat a motion for summary judgment. *Cooney v. Casady*, 735 F.3d 514, 519 (7th Cir. 2013). In addition, not all factual disputes will preclude the entry of summary judgment, only those that "could affect the outcome of the suit under governing law." *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (citation omitted).

The Plaintiffs in this case are proceeding *pro se*. The Court is mindful of the well-settled principle that, when interpreting a *pro se* petitioner's complaint, district courts have a "special responsibility" to construe such pleadings liberally. *Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996). "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). On the other hand, "a district court should not 'assume the role of advocate for the *pro se* litigant' and may 'not rewrite a petition to include claims that were never presented.'" *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999) (quoting *Parker v. Champion,* 148 F.3d 1219, 1222 (10th Cir. 1998), *cert. denied,* 525 U.S. 1151 (1999)).

9

**DISCUSSION**

Before delving into the substantive arguments, some housekeeping is necessary. Since the

filing of the Complaint, this Court has ruled on two motions to dismiss. The first was filed by

State Defendants Indiana State Police ("ISP"), Noble County Prosecutor's Office, R. Cory

Culler, and Sgt. John Petro. Motion to Dismiss (ECF No. 18). The Court entered an order on

September 4, 2018, dismissing all federal law claims asserted against these defendants (including

all claims brought under § 1983 and the ADA). Opinion and Order (ECF No. 26).[5] Plaintiffs'

state law tort claims against these Defendants were not dismissed and remain pending. *However*,

State Defendants Michael Carroll and Tim Dolby "*did not move to dismiss any of Plaintiffs'*

*claims*, thus those federal claims remain." State Defendants' Memorandum (ECF No. 148), p. 2

(italics added). In other words, Plaintiffs' federal *and* state law claims against Carroll and Dolby

remain pending, while only the state law claims remain as to State Defendants ISP, Culler, Petro,

and the Noble County Prosecutor. *Id*. The reason for this, according to Carroll and Dolby, is:

> [S]ome defendants discovered a representation error. The undersigned and the
> Office of the Indiana Attorney General, through a joint motion with attorney Julie
> Havenith, substituted their appearance for Defendants Michael Carroll and Tim
> Dolby, as Indiana State Police officers. [ECF 89.] These State Defendants,
> previously represented by other counsel, did not move to dismiss any of Plaintiffs'
> claims, thus those federal claims remain.

*Id*. On May 31, 2019, Magistrate Judge Susan Collins, to whom this case is on partial referral,

issued an order granting a "Joint Motion for Indiana Attorney General's Office to Substitute

Appearance for Sgt. Tim Dolby and Detective Michael Carroll[.] . . . The appearances of

[attorneys] Bryan R. Findley and Rebecca L. Loeffler are substituted for the appearance of

---

[5] The Court's order of September 4, 2018, was entered by Judge Theresa Springmann.
The case was reassigned to the undersigned on May 10, 2019 (*see* ECF No. 82).

[attorney] Julie J. Havenith[.]" Court Order by docket entry (ECF No. 89). This substitution of counsel was necessary because "Plaintiffs erroneously named Sgt. Tim Dolby and Detective Michael Carroll as Noble County officers in their Complaint. . . . Due to an administrative error, [Noble County defense counsel] mistakenly appeared for Defendants Dolby and Carroll. . . . However, Defendants Dolby and Carroll are, and were at the time of the incidents at issue in Plaintiffs' Complaint, Indiana State Police Officers." Joint Motion to Substitute Appearance (ECF No. 86). Accordingly, the Indiana Attorney General's Office assumed representation of Carroll and Dolby since they were state employees. As a result of this confusion, Carroll and Dolby did not file motions to dismiss and, consequently, their motion for summary judgment addresses both the state *and* federal claims asserted against them.

Next, the Court entered an order on December 17, 2019, granting summary judgment for the Fort Wayne Police Department and dismissing any and all claims asserted against that Defendant. Opinion and Order (ECF No. 132).

Before the Court now, then, are the following motions for summary judgment addressing the following remaining claims:

1) Motion for Summary Judgment by County Defendants Noble County Sheriff's Department, Doug Harp, Sgt. Joe Hutsell, and Lt. Shawn Dunafin, seeking judgment as to Plaintiffs' federal claims and state law tort claims (ECF No. 138);

2) Motion for Summary Judgment by Allen County Sheriff's Department seeking judgment as to all of Plaintiffs' federal claims and state tort claims (ECF No. 140); and

3) Motion for Summary Judgment by State Defendants Michael Carroll, Tim Dolby, R. Cory Culler, Indiana State Police Department, Noble County Prosecutor's Office and Sergeant John R. Petro, seeking judgment as to Plaintiffs' federal and state claims asserted against Carroll and Dolby, and as to Plaintiffs' state law claims asserted against Culler, the ISP, the Noble County Prosecutor, and Petro (ECF No. 147).

**I. Motion for summary judgment by Allen County Sheriff's Department.**

The Court begins with the Allen County Sheriff's Department's motion since it is the simplest one to resolve. The ACSD argues that "the undisputed facts clearly demonstrate that neither the Allen County Sheriff's Department, nor any of its employees had any involvement in the incidents that give rise to this lawsuit. Accordingly, the Allen County Sheriff's Department is entitled to summary judgment as a matter of law on all of the Plaintiff's claims." Allen County Sheriff Department's Memorandum in Support (ECF No. 141), p. 1. This is the same defense the Fort Wayne Police Department used in support of its successful motion to dismiss and it is equally effective with the Sheriff's Department. As the Court stated in its previous order, "[i]t is hard to imagine a better defense to the Plaintiffs' claims than the one advanced by the FWPD, i.e., that the Fort Wayne police were not present during the incident giving rise to the Plaintiffs' allegations." Opinion and Order (ECF No. 132), p. 5. The Sheriff's Department presents evidence in support of its argument, to wit: the affidavit of Allen County Sheriff's Department Captain John Zagelmeier, who serves as "the Department's Internal Affairs Officer" and who "assists the Department with investigations in various litigation matters." Sheriff Department's Memorandum, p. 2 (citing Defendant's Exh. A, Zagelmeier Aff.). Captain Zagelmeier states under oath as follows:

> There are no records that any officer or individual employed by the Allen County Sheriff's Department had any contact with Denice Martin [or] Quinton Martin . . . on August 22, 2017 as alleged in the Plaintiffs' Complaint. . . . There are no records indicating that any Allen County Sheriff's Department officer or employee was present at the address of 214 Masterson in Fort Wayne, Indiana on August 22, 2017.

Zagelmeier Aff. (ECF No. 140-1), p. 2. The ACSD states in its memorandum that "[t]here are

12

absolutely no records showing that any Allen County Sheriff's Department officer or employee

had any contact with the Plaintiffs on August 22, 2017. Ms. Martin concedes as much." *Id*., p. 5.

Indeed, in her deposition, Ms. Martin testified as follows:

> Q. First and foremost, do you have any evidence that any officer or employee of
> the Allen County Sheriff's Department was involved in obtaining the search
> warrant for the residence on East Masterson?
>
> A. No.
>
> Q. To your knowledge do you have any evidence that any officer or employee of
> the Allen County Sheriff's Department was involved in the execution of that
> search warrant?
>
> A. No.
>
> Q. I think last question: Do you have any evidence any officer or employee of the
> Allen County Sheriff's Department was present at the time the search warrant was
> executed?
>
> A. No.
>
> Q. Thank you. I have no further questions.

Denice Martin Deposition (ECF No. 140-2), p. 5. The ACSD also argues that it is entitled to

summary judgment on any state law tort claims for the same reason. The Department states that:

> It is unclear if the Plaintiffs seek to pursue any claims under Indiana state law[.]
> Regardless, the undisputed evidence demonstrates that no officer or employee of
> the Allen County Sheriff's Department had any involvement or contact with the
> Plaintiffs on August 22, 2017 at 214 East Masterson in Fort Wayne, Indiana.
> Given that lack of involvement and interaction, the Plaintiffs' cannot maintain any
> claim under Indiana state law.

Sheriff Department's Memorandum, p. 7. The Department concludes by arguing that:

> The undisputed evidence demonstrates that no member of the Allen County
> Sheriff's Department had any contact with the Plaintiffs on August 22, 2017. No
> member of the Allen County Sheriff's Department was present at 214 East
> Masterson and did not search 214 East Masterson on August 22, 2017. The Allen

County Sheriff's Department did not violate the Plaintiffs' constitutional rights or otherwise commit any state law torts against them.

*Id.*, pp. 8-9. The Sheriff's Department went as far as to state in its Answer to the Complaint that "[t]he Plaintiffs' claims against the Allen County Sheriff's Department are frivolous and the Defendant will seek sanctions if the Plaintiffs continue to pursue this action in bad faith." Answer of Allen County Sheriff (ECF No. 14), p. 2.

The Plaintiffs filed a response to the Sheriff Department's motion, but it does nothing to advance their "claims." Plaintiff's Exhibits & Things Volume III Allen Co. Sheriff's Dept. [John Doe; unknown officers] (ECF No. 161). This response includes: 1) a copy of the Allen County Sheriff Department's Answer to Plaintiffs' Complaint (*id.*, pp. 2-4); 2) a copy of Officer Dunafin's Affidavit in Support of Issuance of Warrant (*id.*, pp. 5-8); and 3) a copy of the search warrant signed by Judge Kirsch on August 21, 2017, at 9:35 p.m. (*id.*, p. 9). None of these documents mention the Allen County Sheriff's Department and they do nothing to support the Plaintiff's allegations that the ACSD had anything at all to do with the issuance or execution of the warrant. In short, the Plaintiffs present no evidence whatsoever that the ACSD was involved in the search or seizure and the ACSD has presented evidence establishing that it was not, including, of course, Ms. Martin's own testimony that she had no evidence of the ACSD's involvement in the search of her home or the seizure of property. And as the Court pointed out in its order dismissing the Fort Wayne Police Department from this action (and as all the Defendants point out), Denice Martin testified that she could not identify the officers that were present on the night in question. Ms. Martin testified in her deposition as follows:

Q. . . . You said there's police officers in your house. Do you know what department those police officers were from?

14

A. I couldn't tell. There was a whole bunch of police officers outside.

Q. All right. I'm talking about the officers that were in your house. Can you identify any of those officers or what–

A. I couldn't–

Q. . . . The officers that were in the house, can you identify them or the department that they were with or worked for?

A. No. I couldn't identify them, no.
. . .

Q. Do you know what department the plain-clothed officers belonged to?

A. No.
. . .

Q. So officers that you can't identify executed a valid search warrant on [your home] on August 22nd, 2017; agreed?

A. Agree.
. . .

Q. Can you identify any of the officers that–

A. No.

Q. –allegedly dragged you out of the house?

A. No.

Supplemental Designation of Evidence, Transcript of Deposition of Denice A. Martin (ECF 115), pp. 7-14.

There is no fact issue here and the Allen County Sheriff's Department is entitled to summary judgment on all of the Plaintiff's claims.

**II. Motion for summary judgment by County Defendants Noble County Sheriff's Department, Doug Harp, Sgt. Joe Hutsell, and Lt. Shawn Dunafin.**

Doug Harp was the Noble County Sheriff at the time of the incident giving rise to this lawsuit. Joe Hutsell and Shawn Dunafin are both deputies with the Noble County Sheriff's Department.  The Noble County Defendants move for summary judgment on all of the Plaintiffs' claims.

### A. Sheriff Doug Harp, Sgt. Joe Hutsell and Lt. Shawn Dunafin.

Harp, Hutsell and Dunafin argue that they "are entitled to summary judgment due to lack of personal involvement and/or are entitled to qualified immunity." County Defendants' Memorandum in Support (ECF No. 139), p. 5. As the Defendants correctly point out, "individual liability under Section 1983 requires that the public official defendant was personally involved in the alleged constitutional deprivation." *Id*. (citing *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017)). The Noble County Defendants argue that they "are entitled to summary judgment as a matter of law on Plaintiffs' federal claims of unreasonable search and seizure, excessive force, First Amendment violations, false arrest, equal protection violations, ADA violations, and property damage because any and all allegations related to these claims occurred during the service of the search warrant and the subsequent handcuffing of Plaintiffs. Summary judgment is appropriate because there is no evidence that anyone from the Noble County Sheriff's Department, specifically, Doug Harp, Lt. Dunafin, nor Sgt. Hutsell, served the search warrant or had anything to do with Plaintiffs being handcuffed and taken outside." *Id*., p. 6 (citing Denice Martin Depo., ECF No. 139-9, p. 46).

The Defendants present evidence in support of their argument and argue as follows:

[T]he evidence shows that both Lt. Dunafin and Sgt. Hutsell arrived at 214 East Masterson Avenue *after* the search warrant had been served and/or executed. . . . In particular, the search warrant was executed at 9:50 p.m. and Sgt. Hutsell and

> Lt. Dunafin did not arrive on the sene until around 10:18 p.m. and 10:26 p.m.,
> respectively. . . . At such time, Plaintiffs had already been handcuffed and
> removed from the house. . . . Further, the evidence shows that Doug Harp was not
> present on the scene at all on August 21, 2017 and into August 22, 2017. . . .
> Therefore, the evidence clearly establishes that Doug Harp and Lt. Dunafin did
> not personally participate in the search pursuant to the search warrant.

*Id*., pp. 6-7. The Defendants concede that Sgt. Hutsell did assist in the search of the Martin

residence. Still, the Defendants argue, "Sgt. Hutsell searched the residence pursuant to the search

warrant, but Plaintiffs have no evidence that Sgt. Hutsell violated their constitutional rights." *Id*.,

p. 7. As to Dunafin, the Defendants note that "'mere presence of an individual during an alleged

constitutional violation, without more, is insufficient to establish personal involvement' and

Plaintiffs cannot hold Lt. Dunafin liable 'simply because [he was] present at the home during the

search.'" *Id*. (quoting *Powell v. Furnish*, 2012 WL 2131174, at *6 (N.D. Ind. 2012)).

Former Sheriff Harp seeks summary judgment for the same reason the Fort Wayne Police

Department and Allen County Sheriff's Department did–i.e., he was not present at the Martin's

house and did not participate in the search of the home or the seizure of property. Hutsell and

Dunafin seek summary judgment because they also were not present when officers entered the

home, placed Denice and Quinton in handcuffs, and removed them from the residence. Since

none of these three Defendants were present or participated in the securing of the home or the

handcuffing and detention of the Plaintiffs they cannot be held personally liable for any alleged

constitutional violations that occurred during that process. As the Defendants point out, since

Harp was never present at the scene and Hutsell and Dunafin "did not arrive on the scene until

around 10:18 p.m. and 10:26 p.m. respectively, which was well after the alleged use of excessive

force occurred[,]" they "were not present and did not have an opportunity to intervene to prevent

17

other officers from allegedly violating Plaintiffs' constitutional rights." *Id.*, p. 9.

As stated above, Harp, Hutsell and Dunafin present evidence to support their positions, including affidavits and other documents. Harp states in his affidavit as follows:

> 4. Other than acting as Sheriff and supervisor of Noble County Sheriff's Deputies, I did not take a personal role in the drafting or execution of the search warrant, the seizure of Plaintiffs Denice and Quinton Martin or property, nor any subsequent actions involving Plaintiffs.
> . . .
>
> 8. On August 21, 2017 and into August 22, 2017, I was not present on the scene of 214 East Masterson Avenue, Fort Wayne, Indiana.
>
> 9. After August 21, 2017, Noble County Sheriff's Department engaged in an investigation stemming from the homicide call it received on August 20, 2017. I did not have any contact with Plaintiffs Denice Martin or Quinton Martin after August 21, 2017.

Harp Aff. (ECF No. 139-10) (paragraph numbers from original).

Dunafin submitted an affidavit in which recounts his involvement and interactions with the Plaintiffs:

> 6. A search warrant for 214 East Masterson Avenue, Fort Wayne, Allen County, Indiana was obtained on August 21, 2017 at 9:35pm from Judge Robert Kirsch.
>
> 7. The search warrant was executed on August 21, 2017 at 9:50pm by Indiana State Police Detective S. Michael Carroll.
>
> 8. On August 21, 2017 at about 10:17pm, a call came into the Noble County Sheriff's Department with a complaint of a search warrant at 214 East Masterson Avenue, Fort Wayne, Indiana. The CAD Report of this call has been attached and incorporated hereto as Exhibit A-2.
>
> 9. I advised dispatch at about 10:18pm that I had been en route to 214 East Masterson Avenue for about twenty-five minutes and I arrived on scene at about 10:26pm. See Trips Detail Report, attached and incorporated hereto as Exhibit A-3.
>
> 10. On August 21, 2017, I was not wearing a police uniform, but rather plain

clothes with a body armor vest with the word "Sheriff" on it. I was driving an unmarked police vehicle.

11. I arrived on the scene after the search warrant had been served and the residence had been cleared by the Indiana State Police Emergency Response Team.

12. I did not participate in the execution of the search warrant, nor in the seizure of Plaintiffs Denice Martin and Quinton Martin or property from the residence.

13. Once on scene, I did not enter the residence. I interviewed the suspect, Tracy Martin, in a police car.
. . .

20. I was present and spoke with Plaintiff Denice Martin on August 21, 2017 into August 22, 2017 with Indiana State Police Detective S. Michael Carroll concerning her son Tracey and the deceased female. This conversation was the extent of my contact and/or interactions with Plaintiff Denice Martin on August 21, 2017 and into August 22, 2017. I did not have any contact and/or interactions with Plaintiff Quinton Martin on August 21, 2017 into August 22, 2017.

21. Following August 21, 2017, I spoke with Plaintiff Denice Martin a few times on the telephone. I returned to Plaintiff Denice Martin's home on September 14, 2017, where Plaintiff Denice Martin consented to a search, which led to the removal of window blinds for testing. Following the testing, the window blinds were returned.

Dunafin Aff. (ECF No. 139-1) (paragraph numbers from original). Dunafin also submitted

records from the Noble County Sheriff's Department supporting his factual statements, including

confirming that he arrived at the scene at 10:26 p.m. CAD (Computer Assisted Dispatch) Call

Report (ECF No. 139-3).

Similarly, Hutsell submitted an affidavit in which he states as follows:

6. I arrived on scene at 214 East Masterson Avenue at about 10:18pm. See Trips Detail Report, attached and incorporated hereto as Exhibit B-2.

7. I was not wearing a police uniform, but rather a polo with a Noble County Sheriff star and a body armor vest with the word "Sheriff" on it. I was driving an unmarked police vehicle.

8. I arrived on the scene after the search warrant had been served and the residence had been cleared by the Indiana State Police Emergency Response Team.

9. I did not participate in the service of the search warrant, nor in the seizure of Plaintiffs Denice Martin and Quinton Martin or property from the residence.

10. Once on scene, I assisted Indiana State Police Detective S. Michael Carroll in the search of the residence pursuant to the search warrant. I did not remove any property from the residence. I did not damage any property while I was searching pursuant to the search warrant.

11. I reasonably believed that the search warrant was valid and supported by probable cause.

12. At about 10:54pm, I requested dispatch contact Duane Leatherman Body Shop, Inc. ("Leatherman's") to come to the scene to tow the Chevrolet Impala back to the Noble County Sheriff's Department.

13. Dispatch advised that Leatherman's was en route to 214 East Masterson Avenue, Fort Wayne, Indiana.

14. At about 11:59pm, Leatherman's arrived on scene at 214 East Masterson Avenue, Fort Wayne, Indiana.

15. After Leatherman's and Lt. Dunafin left the scene at about 12:26am, I remained on the scene, assisting Indiana State Police Detective S. Michael Carroll, until I left the scene at about 1:11am. See Exhibit B.

16. I did not have any contact and/or interactions with Plaintiffs Denice Martin or Quinton Martin on August 21, 2017 into August 22, 2017.

17. After August 21, 2017, I did not have any involvement and/or interactions with Plaintiffs Denice Martin or Quinton Martin.

Hutsell Aff. (ECF No. 139-5) (paragraph numbers from original); CAD Report (ECF No. 139-6).

Based on this evidence, Harp, Dunafin and Hutsell argue that they are entitled to

summary judgment for the simple reason that they were not present at the Martin home at the

time of the events giving rise to the Plaintiffs' claims. They did not participate in serving the

warrant, securing the residence, or handcuffing and detaining Plaintiffs. The evidence shows that Harp was not there at all, and Dunafin and Hutsell arrived just *after* the ISP Emergency Response Team had secured the property and detained Denice and Quinton.

As previously set forth, the Plaintiffs filed a host of documents in response to the County Defendants' motion. *See* ECF Nos. 159, 162-166. Out of all of these filings, the *only* evidence the Plaintiffs present to refute the Defendants' factual assertions is their own affidavits. These affidavits are fraught with problems and the Defendants argue that they should be stricken in part. The challenged affidavits include the Affidavit of Denice Martin (ECF No. 165) and the Affidavit of Tracey L. Martin (ECF No. 166). The Plaintiffs also submitted the Affidavit of Tony F. Martin (ECF No. 177); and the Affidavit of Tyrone Freeman (ECF No. 178). The County Defendants did not move to strike these latter two affidavits, but they did file a sur-reply brief addressing them. Defendants' Surreply [sic] (ECF No. 186). Tyrone Freeman's affidavit was included as part of "Plaintiffs' [Additional] Affidavits & Evidence in Support of Summary Judgment [State Defendants]," and so presumably was filed as part of the Plaintiffs' response to the State Defendants' motion for summary judgment rather than the Noble County Defendants' motion, although that is not entirely clear. In any event, the County Defendants address Freeman's affidavit in their sur reply.

The first challenged affidavit is Denice Martin's at ECF No. 165. Ms. Martin begins that affidavit by restating the same general allegations she has made since filing her Complaint, to wit:

> On or about the 22nd day of August 2017 around 10 p.m., I was laying in my bed and I heard a loud boom. The front door was kicked in, and I saw a lot of flashing lights while hearing a lot of commotion and noise going on from the officers

> making their entry into the house. At no time did any of the officers announce
> themselves as law enforcement. I was thrown to the floor face first, which I was
> worried about my son Quinton who is mentally disabled and didn't understand or
> comprehend to him what was going on at the moment.

Affidavit of Denice Martin (ECF No. 165), p. 1. Then, Ms. Martin, contradicting her deposition

testimony, specifically names the individual Defendants she claims participated in the alleged use

of excessive force:

> Officer Michael Carroll, Officer John Petro, Officer Shawn Dunafin, Officer Tim
> Dolby and Officer Joe Hutsell was twisting Quinton's arms, which they struck
> him all several times with closed fists. He was then slammed to the ground hard
> by the officers. . . . I was struck in the back of my head by Officer Doug Harp
> when pushing my face into the floor and while Cory Culler knee [sic] in the
> middle of my back causing me pain.

*Id*., p. 2. Likewise, Tracey Martin states in his affidavit that he saw "Officer Shawn Dunafin,

Officer Michael Carroll, Officer Tim Dolby, Officer John Petro, and Officer Joe Hutsell and

several unknown officers striking my brother Quinton with closed fist[s]. The officers slammed

him to the ground hard and began kicking him stating stop resisting. . . . My mother Denice was

on the ground yelling that Quinton was Autistic [mentally-handicapped] and didn't understand

what was going on. Officer Doug Harp forcefully shoved her head into the floor in a rough

manner while Officer Cory Culler had his knee in her back." Affidavit of Tracey L. Martin (ECF

No. 166), p. 1. Tracey Martin concludes his affidavit by asserting that "[t]here was in fact Allen

Co. Sheriff Officers, Fort Wayne Officers, Noble Co. Sheriff Officers and Indiana State Police

Officers present on August 22 2017 at the house and conducted the search." *Id*., p. 2.[6]

---

[6] Tracey Martin also attached several documents to his affidavit, including the ISP CAD
report (indicating that a 2002 Chevy Impala was impounded during the search and secured at the
Noble County Sheriff's impound lot), a copy of Joe Hutell's affidavit, a second copy of the CAD
report, a copy of Doug Harp's affidavit, a copy of the ISP Property Record and Receipt (listing
the 34 items seized from the Martin property during the search), and a copy of a purported Tort

22

So how can this be? The evidence submitted by the Defendants, and unrefuted by the Plaintiffs, reveals that Harp was never at the scene and that Dunafin and Hutsell arrived *after* Denice Martin and Quinton Martin were detained, but now Denice Martin insists that all three participated in the use of excessive force and even insists that Harp hit her in the back of her head. And Tracey Martin makes the same assertions in his affidavit. The answer to this mystery, according to the Defendants, is simple: the Plaintiffs are attempting to create fact issues by presenting sham affidavits.

The County Defendants challenge the affidavits on the basis that they are sham affidavits that directly contradict Denice Martin's deposition testimony. County Defendants' Reply Brief (ECF No. 174). The Defendants argue as follows:

> Plaintiffs' Response presents, for the first time, allegations related to these Defendants' alleged involvement in the execution of the search warrant, the alleged use of excessive force, and the subsequent search and removal of items. . . . Plaintiff Denice Martin's Affidavit and Tracy Martin's Affidavit are simply being used by Plaintiffs as an attempt to keep these Defendants in this case.

*Id.*, p. 3. The Defendants further contend that "Plaintiff Denice Martin testified in her deposition that she could not identify the officers that executed the search warrant, allegedly used excessive force, or search and removed items from the home, nor did she have any evidence of [the Noble County] Defendants' involvement on the night in question. Regardless, Plaintiffs' Response directly contradicts the evidence of record, as found in Plaintiff Denice Martin's deposition and the documents and evidence produced during discovery." *Id.*, pp. 3-4. The County Defendants

---

Claim Notice signed by Denice Martin on October 25, 2017, that was directed to the "Noble County Prosecutors Office." Martin Aff. (ECF No. 166), pp. 7-26. It is not clear how these documents are supposed to bolster any of the Plaintiffs' allegations or arguments. In fact, the documents, most of which were already submitted by the Defendants in support of their motion for summary judgment, do the opposite–they support the Defendants' version of events.

elaborate as follows:

> [F]or the first time, Plaintiffs' Response includes allegations of Defendants Doug
> Harp, Lt. Dunafin, and Sgt. Hutsell's alleged involvement in the execution of the
> search warrant, the alleged use of excessive force, and the subsequent search and
> removal of items. These allegations are not only contradicted by the evidence of
> record, but are contradicted by Plaintiff Denice Martin's own sworn deposition
> testimony. A deponent "may not use an affidavit sworn to after a deposition to
> contradict deposition testimony without giving a credible explanation for the
> discrepancies." *Abraham v. Washington Group Intern., Inc.*, 766 F.3d 735, 741
> (7th Cir. 2014). This is referred to as the sham-affidavit rule. *James v. Hale*, 959
> F.3d 307, 316 (7th Cir. 2020). The principle behind the sham-affidavit rule is that
> "a genuine issue of material fact cannot be conjured out of nothing," and as such,
> is used "to week out unfounded claims, specious denials, and sham defenses." *Id*.
> If an affidavit is a sham, then [it] should be excluded. *Id*. at 317.

*Id*., p. 4. The County Defendants also address Denice Martin's affidavit in their motion to strike,

arguing that "[s]tatements made in affidavits that blatantly contradict prior sworn testimony used

to try to create sham issue of genuine dispute are statements that are improper and should be

disregarded." Defendants' Motion to Strike Portions of Plaintiff Denice Martin's Affidavit (ECF

No. 175), p. 2 (citing *Martin v. Indiana*, 2015 WL 4899008, at *1 (N.D. Ind. Aug. 17, 2015)).

The Defendants also note that under the sham-affidavit rule, "[a] court will only strike and

disregard the improper portions of the affidavit and allow the appropriate portions of the affidavit

to stand." *Id*. The Defendants detail once again in their motion to strike how portions of Denice

Martin's affidavit–specifically those paragraphs in which she now alleges that Harp, Dunafin and

Hutsell were personally involved in the use of excessive force–directly contradict her deposition

testimony that she had no evidence of their involvement. Motion to Strike, pp. 2-4. The County

Defendants make the same argument with respect to Tracey Martin's affidavit. Defendants'

Motion to Strike Portions of Tracey L. Martin's Affidavit (ECF No. 176) ("Given that the above

portions of Plaintiff Denice Martin's Affidavit have been shown to be unworthy of belief and

Tracy Martin's Affidavit contains allegations th[at] cover the same ground, the above-referenced

portions of Tracy Martin's Affidavit should be stricken and/or disregarded as unworthy of

belief.").

In *James v. Hale*, the Seventh Circuit explained the sham affidavit rule as follows:

The principal function of summary judgment is to prevent unnecessary trials by screening out factually unsupported claims. *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001). Rule 56(c)(4) serves this screening function by permitting a party to use an affidavit or declaration to support or oppose a motion for summary judgment only if the affidavit (1) attests to facts of which the affiant has "personal knowledge"; (2) "set[s] out facts that would be admissible in evidence"; and (3) "show[s] that the affiant or declarant is competent to testify on the matters stated." Similarly, Rule 56(h) permits a judge to sanction a party who presents an affidavit "in bad faith or solely for delay." Fed. R. Civ. P. 56(h). Rule 56 thus requires a judge to scrutinize the substance of an affidavit offered in response to a summary-judgment motion to determine whether a reasonable jury could rely on the factual statements it contains. *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 252 (3d Cir. 2007).

In furtherance of this screening function and in support of a judge's duty at the summary-judgment stage, every federal court of appeals permits a judge to disregard a "sham" affidavit–typically an affidavit that contradicts prior deposition testimony. *See Babrocky v. Jewel Food Co.*, 773 F.2d 857, 861 (7th Cir. 1985); *Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4-5 (1st Cir. 1994); *Sinskey v. Pharmacia Ophthalmics, Inc.*, 982 F.2d 494, 498 (Fed. Cir. 1992); *Martin v. Merrell Dow Pharms., Inc.*, 851 F.2d 703, 706 (3d Cir. 1988); *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986); *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986); *Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 228 (5th Cir. 1984); *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657-59 (11th Cir. 1984); *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984); *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1364-65 (8th Cir. 1983); *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 544 (9th Cir. 1975); *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 577-78 (2d Cir. 1969).

In this circuit the sham-affidavit rule prohibits a party from submitting an affidavit that contradicts the party's prior deposition or other sworn testimony. *Dunn v. Menard, Inc.*, 880 F.3d 899, 910 (7th Cir. 2018). We also disregard an affidavit that contradicts a statement made under penalty of perjury, even if the statement was not made in the course of litigation. *See United States v. Funds in the Amount*

> *of $30,670.00*, 403 F.3d 448, 466 (7th Cir. 2005) (applying the sham-affidavit rule
> to statements in an affidavit that contradicted representations in the affiant's
> bankruptcy filing and tax returns). The organizing principle of our sham-affidavit
> practice is simply stated: a genuine issue of material fact cannot be conjured out
> of nothing. We adopted the sham-affidavit rule "to weed out unfounded claims,
> specious denials, and sham defenses." *Babrocky*, 773 F.2d at 861.

*James v. Hale*, 959 F.3d at 315-16. And this Court (Judge Brady) also recently discussed the

sham-affidavit rule, explaining as follows:

> The rule against sham affidavits provides that an affidavit is inadmissible when it
> contradicts the affiant's previous sworn testimony unless the earlier testimony was
> ambiguous, confusing, or the result of a memory lapse. *See, e.g., Cook v. O'Neill*,
> 803 F.3d 296, 298 (7th Cir. 2015). The rule is designed to avoid sham factual
> issues and prevent parties from taking back concessions that later prove
> ill-advised. *United States v. Funds in the Amount of $271,080*, 816 F.3d 903, 907
> (7th Cir. 2016). The Seventh Circuit has emphasized that the rule is to be used
> with "great caution." *Id*. Thus, where the change is plausible or the party offers a
> suitable explanation for the change, the changes in testimony go to the witness'
> credibility rather than admissibility. *Id*.

*Clark v. DeKalb Cty. Sheriff*, No. 18-CV-387, 2020 WL 6455057, at *2 (N.D. Ind. Nov. 3,

2020). The sham-affidavit rule is well-established and has been utilized by courts for decades for

reasons exemplified by the present case. Despite her sworn deposition testimony, Denice Martin

alleges for the first time in her affidavit that Harp, Dunafin and Hutsell were personally involved

in using excessive force against her and Quinton. These allegations were made only after the

Defendants had submitted evidence of their *noninvolvement* in the incident giving rise to the

Plaintiffs' claims and fall squarely within the sham-affidavit rule. As another district court

explained:

> The Seventh Circuit has also emphasized that the sham affidavit doctrine is
> uniquely tailored to the needs of the summary judgment procedure, where the
> ruling judge is not permitted to assess the movant's credibility. The court noted in
> *Adelman-Tremblay v. Jewel Companies, Inc*. that "the purpose of summary
> judgment motions–to weed out unfounded claims, specious denials, and sham

26

defenses–is served by a rule that prevents a party from creating issues of credibility by allowing one of its witnesses to contradict his own prior testimony." 859 F.2d 517, 521 (7th Cir. 1988). The sham affidavit doctrine, therefore, reflects the judgment that affidavits cut from whole cloth and offered solely to create issues of fact "are so lacking in credibility as to be entitled to zero weight in summary judgment proceedings unless the affiant gives a plausible explanation for the discrepancy." *Beckel v. Wal-Mart Associates, Inc.*, 301 F.3d 621, 623 (7th Cir. 2002). Without the doctrine, even an affidavit "involv[ing] contradictions so clear that the only reasonable inference was that the affidavit was a sham designed to thwart the purposes of summary judgment" would in fact preclude summary judgment, *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 571 (7th Cir. 2015), because the court otherwise could not grant summary judgment without intruding upon "the jury's role in resolving questions of credibility," *Bank of Illinois*, 75 F.3d at 1169.

*United States ex rel. Robinson v. Indiana Univ. Health Inc.*, 204 F.Supp.3d 1040, 1044 (S.D. Ind. 2016). "[W]here the change [in testimony] is plausible or the party offers a suitable explanation for the change, the changes in testimony go to the witness' credibility rather than admissibility." *Robinson v. Gosiger Mach. Tools, LLC*, No. 18-CV-194, 2020 WL 4904496, at *6, n. 2 (N.D. Ind. Aug. 18, 2020) (quoting *United States v. Funds in the Amount of $271,080*, 816 F.3d 903, 907 (7th Cir. 2016)). In the present case, the Plaintiffs offer no explanation for Ms. Martin's contradictory assertions in her affidavit (or those in Tracey Martin's).

Finally, the Defendants point out that "[i]n addition, Plaintiff Denice Martin testified in her deposition that Tracy Martin was upstairs when the officers entered the house and allegedly exerted excessive force onto her and Quinton." Defendants' Reply Brief (ECF No. 174), p. 6. The Defendants note that Denice Martin testified in her deposition as follows:

Q. Okay. And you indicated that Tracy Martin was at home?

A. Yes, he was.
. . .

Q. What was Tracy doing?

A. He was upstairs.

[Plaintiff's Dep., p. 18]. Then, after describing how the officers entered the house and allegedly used excessive force, Plaintiff Denice Martin testified that the officers went back into the house, started to tear it up, and went upstairs, '[a]nd that's where Tracy was.' [Plaintiff's Dep., p. 20]. However, Plaintiffs present the Affidavit of Tracy Martin as evidence to support their Response, which alleges that Tracy was downstairs once the officers entered the house and was allegedly able to observe the entire encounter. . . . It is clear that there are blatant inconsistencies in the record concerning not only these Defendants' personal involvement, but also as to whether Tracy Martin witnessed the incident itself." Defendant's Reply, p. 6.[7]

The Defendants also point out that the allegations in the affidavits also conflict with Denice Martin's deposition testimony in another way. They note that when questioned under oath about the events, Denice Martin testified as follows:

Q. You were handcuffed?

A. Yes.

Q. You said Quinton was handcuffed?

A. Me and him was handcuffed, and they didn't handcuff Tracy. It was just me and Quinton. . . .

Q. All right. And where did [you] go?

A. We all had to stay outside.
. . .

Q. What were weather conditions like?

_____

[7] The Defendants also point out that the Plaintiffs "fail[ed] to identify Tracy Martin as a witness to the incident during the course of discovery." *Id*., pp. 5-6.

A. It was real–it was–it was nice out.

. . .

Q. Do you know what department the officer or officers belonged to that grabbed you?

A. No.

. . .

Q. And when you say dragged you out [of] the house, what does that mean? Because that can mean different things.

A. We were handcuffed, and we were pulled out.

Q. But you were walking–

A. We were walking.

Q. –with your own two feet?

A. Yes.

Q. It wasn't like you were on the floor being dragged out; right?

A. No.

Q. So you were walking and they were guiding you out of the house is that what you mean?

A. We wasn't guided. We were kind of pulled out of the house.

Q. Okay. Was there any other type of force used against you on August 22nd, 2017, that you haven't told me about by any of the police officers on the scene?

A. No.

Q. Was there any other force used against Quinton on August 22nd, 2017, by any of the officers on the scene that you haven't told me about?

A. No.

Denice Martin Depo. (ECF No. 139-9), pp. 21-22; 29-31.

The Defendants argue that the affidavits are improper under the sham-affidavit doctrine and therefore cannot be used by the Plaintiffs to create a fact issue at the summary judgment stage. The Defendants contend that:

> Plaintiffs' version of events of August 21, 2017, as presented in their Response and in Plaintiff Denice Martin's and Tracy Martin's Affidavits, is clearly contradicted by the evidence of record. A party opposing summary judgment must do more than create a metaphysical doubt as to material facts, but must show that no genuine issue for trial exists. . . . "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."

*Id*., p. 7 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

For the reasons explained above, the Court GRANTS the motions to strike. The portions of Denice Martin's affidavit (ECF No. 165) and Tracey Martin's affidavit (ECF No. 166) challenged by the Defendants are STRICKEN and will not be considered by the Court when ruling on the County Defendants' motion for summary judgment. In light of that, and also for the reasons discussed above, the motion for summary judgment is GRANTED as to all of the Plaintiffs' federal claims asserted against Defendants Harp, Dunafin and Hutsell.

**B. Noble County Sheriff's Department.**

The Plaintiffs named the Noble County Sheriff's Department–that is, the entity itself–asserting that the Department is liable to them for damages allegedly caused by its employees (i.e., Harp, Dunafin and Hutsell). The Department moves for summary judgment on the Plaintiffs' municipal liability claim, contending as follows:

> It is axiomatic that there is no *respondeat superior* liability under Section 1983. *See Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 691-95 (1978). In order for Plaintiffs to prevail on their *Monell* claim, they must plead and prove not only that their rights were violated, but that the Noble County

> Sheriff's Department was the "moving force" behind Plaintiffs' constitutional injury *Id.*; *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). The "moving force" requirement may be demonstrated through: (1) the existence of an express municipal policy that caused the alleged constitutional violation, (2) that the person who committed the constitutional tort was an official with final policymaking authority, or (3) the existence of a pattern, practice, or custom that was so widespread or persistent that it rises to the level of a municipal policy. *Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 735 (7th Cir. 1994).

County Defendants' Memorandum, pp. 11-12. The Defendants argue that while the Plaintiffs have alleged a *Monell* claim, they have failed to present any evidence at all that the Noble County Sheriff's Department had a policy, custom or practice that caused constitutional injury to the Plaintiffs. The Sheriff's Department argues that "Plaintiffs have not identified, nor established an unconstitutional policy of Noble County Sheriff's Department, an unconstitutional action by the Sheriff, nor a pattern, practice or custom of the Sheriff's Department that caused Plaintiffs' constitutional violations." *Id.*, p. 12 (citing Denice Martin's Answers to First Set of Interrogatories, Exh. F (ECF No. 139-11), pp. 7-8). In their interrogatories to the Plaintiffs, the Noble County Defendants asked the Plaintiffs if they were claiming "that an express policy of Noble County or the Noble County Sheriff's Department caused the constitutional deprivations alleged in your complaint?"; whether they were claiming "that a widespread practice of Noble County or the Noble County Sheriff's Department . . . caused the constitutional violations alleged in your complaint?"; and whether they were contending "that a person with the final policymaking authority of Noble County of the Noble County Sheriff's Department caused the deprivations alleged in your Complaint?" *Id*. The Plaintiffs responded to these interrogatories by stating as follows: "Objection, plaintiff argues 'attorney-client' privilege, plaintiff is seeking an attorney in this matter; plaintiff preserves [sic] the right to supplement [its] [sic] answers as

discovery continues." *Id*., p. 8. The closest the Plaintiffs come to stating a *Monell* claim is the

following paragraph in one of their responsive filings:

> The Noble Co. Sheriff's Dept had no policy regarding "mentally disabled"
> citizens, and coming into contact with them. Doug Harp, Joe Hutsell, and Shawn
> Dunafin were acting on unwritten customs that infringed upon plaintiffs' rights
> resulting in injury. . . . The Noble Co. Sheriff's Dept. also had direct involvement
> in application of search warrant knowing it included false/misleading
> information.[8]

---

[8] The last sentence in this quoted paragraph, i.e., that "[t]he Noble Co. Sheriff's Dept.
also had direct involvement in application of search warrant knowing it included false/misleading
information[,]" requires another diversion from the Court's discussion. Denice Martin states in a
responsive pleading that "[a]t no time did Suzanne Moore stay at my house over night, which I
only met her once or twice when she was with my son Tracey, and I don't know why the officers
would search my house because matters dealing with her, far as I know she was staying with her
parents." Denice Martin Aff. (ECF No. 165), p. 3. In other words, according to Martin, the
warrant was somehow invalid because in his affidavit in support of the warrant, Dunafin
included the statement that "it was learned [from Ms. Moore's parents] that Suzanne Moore had
been in a relationship with Tracy Martin, and Suzanne Moore lived with Tracy Martin and his
mother Denice Martin[.]" Dunafin Aff. In Support of Warrant (ECF No. 139-2), p. 2, ¶ 11.
Denice Martin insists now that that statement was a lie and that Suzanne Moore never spent the
night at her house. It is unclear why the Plaintiffs believe this statement, even assuming it was
false rather than just a mistake of fact, renders the search warrant invalid or illegal. Dunafin's
probable cause affidavit is lengthy, and contains a detailed recitation of the basis for the warrant,
which was issued by an impartial judge; not to mention the fact that many of Ms. Moore's
personal belongings were found in the home during the search. But the Court need not address
this further, because as the Defendants correctly point out, these "allegations . . . were not pled in
the Complaint and should not be considered[.] . . . For the first time in this lawsuit, Plaintiffs
allege that the Noble County Sheriff's Department obtained the warrant to search the residence
under false pretenses and provided false information to obtain the warrant. . . . These allegations
were not made in Plaintiffs' Complaint, but were instead raised for the first time in response to a
motion for summary judgment. 'A claim raised for the first time in response to a motion for
summary judgment is not properly before the court.' *Chinn v. Cantrell*, 2006 WL 2927595, at *4
(N.D. Ind. Oct. 11, 2006) (citing *Aida Food and Liquor, Inc. v. City of Chicago*, 439 F.3d 397,
402 (7th Cir. 2006)). Failure to raise these claims in the complaint constitutes a waiver and
Plaintiffs cannot amend their complaint through arguments made in opposition to these
Defendants' Motion for Summary Judgment. *See Anderson v. Donahoe*, 699 F.3d 989, 997 (7th
Cir. 2012)." Defendants' Reply, p. 8. Not only have the Plaintiffs never raised this argument
before, it directly contradicts Denice Martin's deposition testimony, in which she testified that
she agreed the officers had a valid search warrant and were legally searching her house. Denice
Martin Dep. (ECF No. 139-9), p. 28. Accordingly, the Plaintiffs' attempt to argue now that the

Plaintiffs' Response (ECF No. 163), p. 6 (citations omitted). The Noble County Sheriff's

Department responds as follows:

> [T]he evidence shows that the service of the search warrant and the seizure of
> Plaintiffs and the property were not done pursuant to Noble County Sheriff's
> Department's policies and procedures because no one from the Noble County
> Sheriff's Department participated in the service of the search warrant or
> subsequent seizures. . . . Plaintiffs fail to allege that any one policy or procedure
> was unconstitutional, nor a practice or custom of the Noble County Sheriff's
> Department that caused their alleged constitutional violations. As such, the
> evidence establishes that the constitutional violations of which Plaintiffs complain
> were not caused by any Noble County Sheriff's Department policies, whether
> written or unwritten.

Defendants' Memorandum (ECF No. 139), p. 13. It is well-established that conclusory and

unsupported allegations are insufficient to survive summary judgment. "'Rule 56 demands

something more specific than the bald assertion of the general truth of a particular matter, rather

it requires affidavits that cite specific concrete facts establishing the existence of the truth of the

matter asserted.'" *Hoosier v. Greenwood Hosp. Mgmt. LLC*, 32 F.Supp.3d 966, 971 (N.D. Ill.

2014) (quoting *Hadley v. County of Du Page*, 715 F.2d 1238, 1243 (7th Cir. 1983)). "Conclusory

allegations will not defeat a motion for summary judgment." *Id*. (citing *Thomas v. Christ Hosp.

and Medical Center,* 328 F.3d 890, 893-94 (7th Cir. 2003)) (in turn citing *Lujan v. Nat'l Wildlife

Federation*, 497 U.S. 871, 888-89, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)). "Unsupported

speculation also will not defeat a summary judgment motion; and an affidavit that includes

general opinions and beliefs does not create a genuine issue of material fact sufficient to defeat

summary judgment." *Id*. (citing *Cleveland v. Porca Co.*, 38 F.3d 289, 295 (7th Cir. 1994)). In the

present case, conclusory allegations are the only thing the Plaintiffs present in support of their

---

search warrant was invalid is improper, misguided and unavailing.

*Monell* claim against the Noble County Sheriff. That is not enough to survive the Sheriff

Department's motion for summary judgment.

While the evidence of record shows that Harp was not present at the scene and Dunafin

did not participate in the search of the home, the County Defendants readily concede that officer

Hutsell *did* assist Indiana State Police officer Carroll during part of the search of the property.

Hutsell affirmed as much in his affidavit:

> 10. Once on scene, I assisted Indiana State Police Detective S. Michael Carroll in
> the search of the residence pursuant to the search warrant. I did not remove any
> property from the residence. I did not damage any property while I was searching
> pursuant to the search warrant.
>
> 11. I reasonably believed that the search warrant was valid and supported by
> probable cause.
>
> 12. At about 10:54pm, I requested dispatch contact Duane Leatherman Body
> Shop, Inc. ("Leatherman's") to come to the scene to tow the Chevrolet Impala
> back to the Noble County Sheriff's Department.
>
> 13. Dispatch advised that Leatherman's was en route to 214 East Masterson
> Avenue, Fort Wayne, Indiana.
>
> 14. At about 11:59pm, Leatherman's arrived on scene at 214 East Masterson
> Avenue, Fort Wayne, Indiana.
>
> 15. After Leatherman's and Lt. Dunafin left the scene at about 12:26am, I
> remained on the scene, assisting Indiana State Police Detective S. Michael
> Carroll, until I left the scene at about 1:11am. See Exhibit B.
>
> 16. I did not have any contact and/or interactions with Plaintiffs Denice Martin or
> Quinton Martin on August 21, 2017 into August 22, 2017.
>
> 17. After August 21, 2017, I did not have any involvement and/or interactions
> with Plaintiffs Denice Martin or Quinton Martin.

Hutsell Aff. (ECF No. 139-5). The Plaintiffs' present no evidence to refute any of Hutsell's

factual assertions. They merely repeat, as they do ad nauseam throughout their pleadings, that

Denice Martin saw many officers, including Joe Hutsell, "go inside of the house and out of the house many times removing personal property, clothing, safes, computers, firearms, property shoved in boxes and bags, which my Chevy Impala was even taken and towed for no reason by Shawn Dunafin, Michael Carroll, and Joe Hutsell and was taken to an unknown location." Denice Martin Aff. (ECF No. 165), pp. 2-3.

But Hutsell does not deny that he participated in the search (only that he did not personally remove any property) or that he seized Martin's vehicle. The County Defendants argue that "[t]o the extent that Sgt. Hutsell participated in the search of the residence, Sgt. Hutsell was searching pursuant to a valid search warrant and was legally searching. Further, Sgt. Hutsell did not remove any property from the residence. [Hutsell Affidavit, at ¶ 10]. Because Sgt. Hutsell acted pursuant to a valid search warrant, Sgt. Hutsell did not violate the Plaintiffs' constitutional rights." Defendants' Memorandum, p. 8. It is well-established that "[a] search performed pursuant to a valid warrant issued by a judge is presumptively reasonable." *Newson v. Lopez*, No. 16-CV-1084, 2018 WL 1054392, at *3 (E.D. Wis. Feb. 26, 2018) (citing *Archer v. Chisholm*, 870 F.3d 603, 613 (7th Cir. 2017)); *see also*, *Fosnight v. Jones*, No. 19-CV-134, 2019 WL 6522878, at *8 (S.D. Ind. Dec. 4, 2019) ("The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Muhammed v. Pearson*, 900 F.3d 898, 903 (7th Cir. 2018). The Fourth Amendment does not protect "against *all* searches and seizures, but only against *unreasonable* searches and seizures." *U.S. v. Sharpe*, 470 U.S. 675, 682 (1985) (emphasis in original). A search pursuant to a valid warrant is presumptively reasonable. *Archer*, 870 F.3d at 613; *Riley v. California*, 573 U.S. 373, 382 (2014)

("[R]easonableness generally requires the obtaining of a judicial warrant."). The Complaint . . .

fails to allege any facts that could show that despite the warrant, the search was unconstitutional

*and* that the officials executing the search knew or reasonably should have known that their

conduct was unconstitutional. *See Muhammed*, 900 F.3d at 903."); *King v. Town of Danville*,

Indiana, No. 15-CV-252, 2017 WL 11507444, at *1 (S.D. Ind. Aug. 22, 2017) ("[t]he Kings have

identified no constitutional violation based on the seizure, retention, and damage to their

property. The Danville Defendants are therefore entitled to summary judgment on the Kings'

constitutional claims based on these allegations.").

      For the foregoing reasons, Defendant Hutsell is entitled to summary judgment on the

Plaintiffs' claims asserted against him for illegal search and seizure (or any other federal claim

that the Plaintiffs may arguably be asserting against him arising out of the search and seizure of

property).

      Finally, the County Defendants argue that the Plaintiffs have failed to state any viable

state law tort claims against them. The Defendants contend that "Plaintiffs fail to establish a

genuine issue of material fact as to these Defendants' liability on the alleged state law claims.

Because Plaintiffs state tort claims arise out of the same operative facts and Plaintiffs have failed

to establish that they suffered deprivations of their constitutional rights, their state law claims are

unsupported and should not survive summary judgment." Noble County Defendants' Reply (ECF

No. 174), p. 12 (citing *Jefferson v. Gatton*, 2019 WL 3935329, at *4 (N.D. Ind. Aug. 19, 2019)).

The Defendants are correct again. The Plaintiffs allege state law claims "for harassment,

retaliation, and retaliatory conduct since the initial search on August 22, 2017." Complaint, p. 7.

      Since the Court has already determined, based on the admissible evidence of record, that

Harp, Dunafin and Hutsell were not personally involved in the initial seizure of the Plaintiffs,

they cannot be liable for any property damage that allegedly resulted during the securing of the

home and the detention of the Plaintiffs (assuming that is the basis for any state tort claim).

Moreover, it is not clear exactly what state tort claims the Plaintiffs are asserting, given that they

use the vague terms "harassment" and "retaliatory conduct." As the County Defendants put it,

"Plaintiffs also assert claims of harassment and retaliation since the search. . . . It is unclear the

basis [sic] for these claims and there is no evidence of Plaintiffs engaging in a constitutionally

protected activity sufficient to establish a retaliation claim." Defendants' Memorandum, p. 9, n.

3. The Defendants further point out that "Lt. Dunafin did contact Plaintiff Denice Martin after

August 21, 2017 via telephone and went to her residence on September 14, 2017. However, there

is no evidence that Lt. Dunafin's actions were harassing or retaliatory in nature and as such,

summary judgment is appropriate on these claims." *Id*. Not only do the Plaintiffs not present any

evidence of any harassment or retaliation after the search, but the allegations themselves conflict,

yet again, by Denice Martin's deposition testimony. When asked about the actions of the

Defendants after the search, Denice Martin testified that "a few of 'em came back to my house

like a few days later[]" and "just started asking me questions, a lot of questions about Tracy."

Denice Martin Depo. (ECF No. 139-9), p. 47. Finally, as the Defendants state:

> Plaintiff Denice Martin testified in her deposition that Noble County officers sat
> with her in the car while other officers were searching and removing property,
> explained the reason for the search, and questioned her a few days later about the
> murder investigation and her son Tracy. [Plaintiff's Dep., at pp. 46-47]. On
> August 21-22, 2017, Doug Harp and Sgt. Hutsell did not speak with and/or
> interact with Plaintiffs. [Harp Affidavit, at ¶ 8; Hutsell Affidavit, at ¶ 16]. Lt.
> Dunafin spoke with Plaintiff Denice Martin on August 21 or August 22, 2017
> about her son Tracy and the deceased female, but had no other conversations with
> Denice and had no conversations and/or interactions with Plaintiff Quinton

> Martin. [Dunafin Affidavit, at ¶ 20]. Regardless, Plaintiff does not allege that
> speaking with her on that night violated her constitutional rights. Further, Lt.
> Dunafin did meet her on September 14, 2017 concerning a subsequent search, but
> Plaintiff does not allege that this violated her constitutional rights. [Dunafin
> Affidavit, at ¶ 21; Plaintiff's Dep., p. 47].

Defendants' Memorandum, p. 6, n. 2. The Plaintiffs have stated no identifiable state tort claims against the County Defendants (or any other Defendants). The allegations on which their purported tort claims rest are merely generalized grievances about being contacted by Dunafin after the initial search as part of the continuing investigation into Moore's murder (they present no evidence that Carroll contacted them after August 22 other than Denice Martin's assertion that he was present with Dunafin on September 14). The Plaintiffs' factual assertions do not state claims for any recognizable torts for harassment or retaliation and the Defendants are entitled to summary judgment on these claims.

Finally, one last matter as to the County Defendants' motion. As mentioned above, the Plaintiffs submitted affidavits from Tony Martin and Tyrone Freeman in support of their opposition to the motions for summary judgment. The County Defendants sought permission to file a sur-reply to address these affidavits and Magistrate Judge Collins granted it. In their sur-reply, the Defendants argue that neither of these affidavits add anything to the calculus, but serve only to reiterate undisputed facts. Defendants' Sur Reply (ECF No. 186). This is correct. Tony Martin states in relevant part in his affidavit that he arrived at his sister Denice's house after the search had begun and "noticed that there was multiple officers at the house" and that "they were bringing personal property, safes, clothing, and other belongings out of the house and putting them inside the truck." Tony Martin Aff. (ECF No. 177). He also states that "three officers loaded my sister's car and my nephew Tracey's car onto the flat bed[.]" *Id*. Similarly, Tyrone

Freeman states in relevant part in his affidavit that he stood outside his nearby home and saw "my neighbor Denice and her son Quenton [sic] handcuffed, and they were being roughly treated and shoved into the backseat of a police car[,]" and that he and Tony Martin "sat on the porch and just watched the officers go in and out of his house; bringing out personal property, safes, clothing, and it seemed as if they were being placed inside of the police truck. They also towed my neighbor's cars by a tow truck." Tyrone Freeman Aff. (ECF No. 178), p. 3. The County Defendants are correct that these affidavits only confirm undisputed facts. They do not make specific assertions against individual defendants and they do not create any fact issues.

For the reasons just discussed, the County Defendants–the Noble County Sheriff's Department, former Sheriff Harp, officer Hutsell and officer Dunafin–are entitled to summary judgment on all of the Plaintiffs' claims.

### III. Motion for Summary Judgment by Michael Carroll, Tim Dolby, R. Cory Culler, Indiana State Police Department, Noble County Prosecutor's Office and Sergeant John R. Petro ("State Defendants").

#### A. State law tort claims.

As stated above, this Court (Judge Springmann) dismissed all of the Plaintiffs' federal claims against State Defendants ISP, Noble County Prosecutor, and Indiana State Police officers John Petro and R. Cory Culler. Opinion and Order (ECF No. 26). The only claims remaining against these Defendants, then, are the Plaintiffs' state law tort claims, which were not dismissed by Judge Springmann. Judge Springmann did not address the merits of the Plaintiffs' purported state claims. The State Defendants asked in their motion to dismiss that the Court decline to exercise its supplemental jurisdiction over those claims. But because federal claims against the County Defendants were still pending, Judge Springmann ruled that the state law claims

remained pending and the Court retained supplemental jurisdiction over those claims. Thus, the

Plaintiffs' state law tort claims are still pending against *all* of the State Defendants. But as the

Court has already explained above, the claims do not survive summary judgment as to any of the

Defendants, county or state.

Again, the only state law "claims" the Plaintiffs assert are one for "harassment" and one

for "retaliation," both arising out of what Denice Martin alleges was harassment she was

subjected to in the days and weeks after the search of her house. Specifically, in their Complaint

the Plaintiffs allege that the Defendants (all of them) "are 'responsible' for harassment,

retaliation, and retaliatory conduct since the initial search on August 22, 2017." Complaint, p. 7.

That is the entirety of the Plaintiffs' allegations regarding harassment and retaliation. In one of

their responsive pleadings, Denice Martin contends as follows:

> On September 14, 2017 and September 25, 2017 Officer Michael Carroll and
> Officer Shawn Dunafin returned to plaintiff's home and searched the home again,
> "seizing" blinds out of the window and other personal property without a warrant.
> Both Officers told plaintiff that it was in her best interest to let them look again
> and that she could be held for interfering in a investigation. . . . Plaintiff also
> received numerous phone calls from them pressing her for information that she
> told then that she had "no" knowledge of. Plaintiff wanted them to just leave her
> alone, but it was ongoing.

Plaintiffs' [Response] to Defendants' Summary Judgment [State Defendants] (ECF No. 168), pp.

7-8.[9]

---

[9] County Defendant Dunafin conceded that he had followup visits and conversations with
Denice Martin after August 22, 2017. In his affidavit, Dunafin states: "Following August 21,
2017, I spoke with Plaintiff Denice Martin a few times on the telephone. I returned to Plaintiff
Denice Martin's home on September 14, 2017, where Plaintiff Denice Martin consented to a
search, which led to the removal of window blinds for testing. Following the testing, the window
blinds were returned." Dunafin Aff. (ECF No. 139-1), p. 3, ¶ 21. ISP Trooper Carroll did not
submit an affidavit, but the State Defendants did submit a copies of Carroll's Incident Report and
his "Original Narrative," in which he recounts the events of the search and his involvement in it.

The State Defendants argue, as to the Plaintiffs' purported tort claim for harassment, that no such claim exists. State Defendants' Reply Brief (ECF No. 182), p. 13, n. 1 ("Plaintiff makes one last reference to a claim of 'harassment.' . . . Not only does such a claim not exist, Plaintiffs have identified no evidence to support these alleged claims that took place almost a month after the events at issue."). Indeed, the Plaintiffs' have simply stated that they felt harassed by a followup visit and phone calls from Dunafin. (The Plaintiffs do not allege "harassment" or "retaliation" against any other Defendants, even though their Complaint states that these claims are asserted against all named Defendants.) The Plaintiffs cite no authority–case law or statute–as the basis for their harassment claim. The same goes for their purported state tort claim for "retaliation." The Plaintiffs' allegations, even liberally interpreted, do not state the elements of any identifiable Indiana state law claims for harassment or retaliation. As this Court has

_____

State Defendants' Supplemental Discovery Response (ECF No. 180-1). Those documents indicate that Carroll arrived at the Martin home at 10:17 p.m., shortly after the ISP ERT had secured the premises and detained the Plaintiffs. *Id*. Officer Carroll's narrative does not indicate that he had any contact with the Plaintiffs, either in person or by phone, after August 22, 2017. The only evidence that the Plaintiffs present of Carroll's alleged harassment or retaliation after the incident is Denice Martin's assertion that Carroll was present when Dunafin returned to her home on September 14, 2017. As to Dunafin, the County Defendants noted in their memorandum that "Plaintiffs also assert claims of harassment and retaliation since the search. . . . It is unclear the basis for these claims and there is no evidence of Plaintiffs engaging in a constitutionally protected activity sufficient to establish a retaliation claim. Lt. Dunafin did contact Plaintiff Denice Martin after August 21, 2017 via telephone and went to her residence on September 14, 2017. However, there is no evidence that Lt. Dunafin's actions were harassing or retaliatory in nature and as such, summary judgment is appropriate on these claims." County Defendants' Memorandum (ECF No. 139), p. 9, n. 3. The County Defendants cited to Denice Martin's deposition to establish this point. *Id*. (citing Denice Martin Depo., p. 47) (". . . a few of them came back to my house like a few days later[]" and "started asking me questions, a lot of questions about Tracy."). Aside from Dunafin, who acknowledged that he had contact with Denice Martin after August 22, she was unable to name any other officers who allegedly harassed her or retaliated against her. This is the extent of the Plaintiffs allegations against *any* defendants in support of their tort claims for harassment and retaliation.

explained, undeveloped and unsupported arguments are insufficient to survive summary

judgment. *Priddy v. Atl. Specialty Ins. Co.*, 468 F.Supp.3d 1030, 1041 (N.D. Ind. 2020)

("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent

authority, are waived.") (quoting *United States v. Cisneros*, 846 F.3d 972, 978 (7th Cir. 2017)

(internal quotations omitted)); *see also*, *United States v. 5443 Suffield Terrace, Skokie, Ill.*, 607

F.3d 504, 511 (7th Cir. 2010) ("[I]t was not the district court's job to sift through the record and

make [Plaintiff's] case for him.").

The State Defendants also argue that even if the Plaintiffs allegations could be interpreted

as stating a recognized claim, they are entitled to immunity from those claims "pursuant to the

Indiana Tort Claims Act." State Defendants' Memorandum, p. 11. The individual State

Defendants, Culler, Petro, Carroll, and Dolby, argue as follows:

> Those claims remaining against State Defendants, Culler, Petro, Carroll, and
> Dolby, must also be dismissed as they are entitled to immunity under the Indiana
> Tort Claims Act. Indiana Code § 34-13-3-5(b) states, "a lawsuit alleging that an
> employee acted within the scope of the employee's employment bars an action by
> the claimant against the employee personally." The Indiana Supreme Court
> defines 'scope of employment' as "conduct of the same general nature as that
> authorized, or incidental to the conduct authorized". *Celebration Fireworks, Inc.
> v. Smith*, 727 N.E.2d 450, 453 (Ind. 2000) (quoting Restatement (Second) Agency
> § 229 (1958)). "Even tortious acts may fall within the scope of employment." *Id*.
> The rationale behind this immunity is "to ensure that public employees can
> exercise their independent judgment necessary to carry out their duties without
> threat of harassment by litigation or threats of litigation over decisions made
> within the scope of their employment". *Id*. at 452 (quoting *Indiana Dept. of
> Correction v. Stagg*, 556 N.E.2d 1388, 1343 (Ind. Ct. App. 1990). The Supreme
> Court of Indiana has held "even criminal acts may be considered as being within
> the scope of employment if 'the criminal acts originated in activities so closely
> associated with the employment relationship as to fall within its scope'." *Stropes
> v. Heritage House Childrens Ctr. of Shelbyville, Inc.*, 547 N.E.2d 244, 247
> (Ind.1989).
>
> Here, Plaintiffs have named, broadly, a swath of law enforcement officers who

were involved with the execution of a search warrant at 214 East Masterson Ave.
Each and every allegation present in Plaintiffs' Complaint coupled with the
undisputed material facts presented show that these individuals and the actions
they took fit squarely within the confines of their employment as law enforcement
officers. Even if Plaintiffs' claims amounted to actual violations of their
constitutional rights, State Defendants actions "'are so closely associated with the
employment relationship as to fall within its scope,'" *Id.*, such that they are each
entitled to immunity under the Indiana Tort Claims Act.

State Defendants' Memorandum, pp. 11-12.

In response to this argument, the Plaintiffs contend that they filed a proper Notice of Tort

Claim and therefore their state claims are valid. Plaintiffs' Response (ECF No. 168), p. 10

("Plaintiffs contest that under the ITCA provision 34-13-3-8, 'notice' was fulfilled upon the

defendants, which plaintiffs sent [their] [sic] notice of tort to defendants on October 25, 2017 via

by [sic] U.S. postal mail."). But as the State Defendants point out, they do not argue that they did

not receive notice of the Plaintiffs claims. "Rather, State Defendants argue that because the

actions of which Plaintiffs complain[] fall within the scope of employee immunity under [the

ITCA], Plaintiffs' state claims against the individual defendants must be dismissed." State

Defendants' Reply, p. 14. The Plaintiffs do not present any arguments to refute the State

Defendants' position. Thus, even assuming the Plaintiffs have pleaded recognizable tort claims,

the State Defendants are entitled immunity under the ITCA.

The State Defendant entities–that is, the Indiana State Police and the Noble County

Prosecutor's office–argue that they are immune from suit pursuant to the Eleventh Amendment:

Plaintiffs' remaining claims are solely state claims. But, the Eleventh Amendment
states, "[t]he Judicial power of the United States shall not be construed to extend
to any suit in law or equity, commenced or prosecuted against one of the United
States by Citizens of another State, or by Citizens or Subjects of any Foreign
State." U.S. Const. Amend. XI. Though specifically speaking of "suits filed by
citizens of another state, the Supreme Court 'has consistently held that an

43

unconsenting State is immune from suits brought in federal courts by her own
citizens as well as by citizens of another State.'" *Peirick v. Indiana U.-Purdue U.
Indianapolis Athletics Dept.*, 510 F.3d 681, 694-95 (7th Cir. 2007) (citing
*Edelman v. Jordan*, 415 U.S. 651, 662–63, (1974)). Eleventh Amendment
immunity applies to both injunctive relief and monetary relief. *Ameritech Corp. v.
McCann*, 297 F.3d 582, 585 (7th Cir. 2002).

Here, the Indiana State Police and the Noble County Prosecutor's office, being
state agencies, are immune from suit pursuant to the Eleventh Amendment. Any
state law claims remaining against these state agencies must be dismissed.

State Defendants' Memorandum, p. 11. The Plaintiffs respond to this argument by simply stating

that they "contest that there is no direct cause of action under the 14th Amendment [sic], which

litigants 'must' proceed under § 1983 standards." Plaintiffs' Response (ECF No. 168), p. 8. In

reply, the State Defendants argue that the Plaintiffs' argument is "unavailing. The Eleventh

Amendment bars any and all claims present." State Defendants' Reply, p. 14 (citing *Peirick*, 510

F.3d at 694-95). The Defendants are correct–the Indiana State Police and the Noble County

Prosecutor's Office are entitled to Eleventh Amendment immunity from suit on the Plaintiffs'

state law claims.

For all of the reasons explained above, the Plaintiffs' purported state law tort claims for

harassment and retaliation do not survive summary judgment. Summary judgment is GRANTED

in favor of all Defendants on the Plaintiffs' state law claims and those claims are dismissed.

**B. Federal claims.**

The only remaining claims against the State Defendants (and the only remaining claims at

all against any named defendants) are the Plaintiffs' federal claims against Carroll and Dolby

(who did not file a motion to dismiss when the other State Defendants–ISP, Noble County

Prosecutor, Culler and Petro–did). These claims fail for the same reasons they failed to survive

the County Defendants' motion for summary judgment, which is that the evidence of record shows that neither Carroll nor Dolby personally participated in the alleged use of excessive force and that both officers were acting pursuant to a valid warrant.

Officer Carroll's narrative report indicates that he arrived at the Martin home after the alleged use of force and detention of the Plaintiffs. Carroll Narrative (ECF No. 180-1). Officer Dolby's narrative report reveals that he also arrived after the home and the Plaintiffs were secured. Dolby Narrative (ECF No. 180-2) ("I arrived at . . . the scene at approximately 9:54 pm August 21, 2017, after Indiana State Police (ISP) SWAT entered the home. SWAT made contact with several people inside the home and removed them to the outside.").

It is undisputed that Carroll participated in the search of the home. Dolby, on the other hand, states that his role was to "document[] the exterior and interior of the home with photography." Dolby Narrative, p. 1.[10]

_____

[10] Unfortunately, another diversion from the substantive discussion is necessary. After the State Defendants filed their supplemental answer to discovery by submitting the Carroll and Dolby narrative reports (ECF No. 180), the Plaintiffs filed "Plaintiffs' [Objection] Opposition to 'State Defendants' Supplemental Responses & Sanctions, Bad Faith Filings/Improper Discovery" (ECF No. 187), contending that "discovery in this case has been 'closed' pursuant to the Court's scheduling deadlines in this case, which the defendants now are trying to manipulate the closed discovery with bad faith filings." *Id*., p. 1. The Plaintiffs also argue that the defendants had objected previously to disclosing the narrative reports, then waited "until it was crunch time and they felt that they were defeated in their summary judgment, then in their reply they now waive their objection and supplement discovery with a bad faith attempt to smear plaintiff's witness Tracey Martin, and confuse the Court." *Id*., p. 2. The Plaintiffs "hope and pray that the Court rejects and 'strike' defendants' supplemental pleadings from the record as a matter of law, and or order sanctions upon defendants for their bad faith filings." *Id*., p. 5. The State Defendants responded by arguing that "Plaintiffs are mistaken on a number of grounds. First, the Indiana State Police, not all State Defendants, supplemented responses to the Plaintiffs' discovery requests as the Indiana State Police were the only State Defendant subject to a timely and proper discovery request and, therefore, any supplementation obligation. For summary judgment, the Indiana State Police has no use of the supplemental documents and its defense, sovereign immunity pursuant to the Eleventh Amendment, is a legal defense that needs no parol evidence.

The Plaintiffs present no evidence that Carroll or Dolby were involved in the alleged use of excessive force or the detention of the Plaintiffs. The only evidence they have are affidavits from Denice Martin and Tracey Martin, in which they repeat their previously stricken allegations that Carroll and Dolby (in addition to all the other individual officers the Plaintiffs named) "was twisting Quinton's arm, which they struck him . . . several times with closed fists[]" and "slammed [him] to the ground hard[.]" Denice Martin Aff. (ECF No. 170); Tracey Martin Aff. (ECF No. 171) ("I seen . . . Officer Michael Carroll [and] Officer Tim Dolby . . . striking my brother Quinton with closed fist[]" and "[t]he Officers slammed him to the ground hard[.]"). These two additional affidavits are virtually identical to the Plaintiffs' previous two. These statements have been stricken from Denice and Tracey Martin's previous affidavits (at ECF Nos. 165 and 166) for the reasons explained above, and the Plaintiffs' attempt to repeat them fail for the same reasons. Accordingly, paragraphs 4 and 5 of Denice Martin's affidavit at ECF No. 170, and paragraphs 3 and 4 of Tracey Martin's affidavit at ECF No. 171 are STRICKEN and will not

---

Instead, because other State Defendants, to whom no timely or proper discovery requests were ever served, designated the documents for use as evidence, the Indiana State Police could no longer maintain its good faith objections and filed its supplementation accordingly." State Defendants' Response to Plaintiffs' Objection (ECF No. 190), p. 2. The State Defendants also argue that the County Defendants, when responding to discovery requests propounded on them by the Plaintiffs, "identified the existence of the complained-of-supplemental discovery in their Response to Plaintiffs' Request for Production of Documents. [Citing County Defendants' Response to Discovery (ECF No. 81).] Specifically, the County Defendants, when addressing a request for police reports, responded 'See Indiana State Police Incident Report No. 17ISPC009217 to be produced by the Indiana State Police at its discretion.' . . . Not only were Plaintiffs served multiple responses to their requests for production by the Indiana State Police and the County Defendants, the Plaintiffs took no further action." *Id.*, p. 4. Finally, the Defendants argue that [w]hile Plaintiffs have technically objected to the evidence, they have objected on the sole basis that it is detrimental to their case. Movants, generally, and here the State Defendants, are not foreclosed from submitting supplemental evidence during the reply stage of a motion for summary judgment[.]" *Id.*, p. 6. The Court concludes that the Plaintiffs' objection is unavailing and it is overruled.

be considered by the Court. Accordingly, the Plaintiffs fail to present any admissible evidence showing that Carroll or Dolby personally participated in the events giving rise to the Plaintiffs' constitutional claims. As such, Carroll and Dolby, like Hutsell, Dunafin and Petro, are entitled to summary judgment on all of the Plaintiffs' federal claims.

The Plaintiffs' only *non*-constitutional federal claim, brought under the ADA, also fails to survive summary judgment. The Plaintiffs' assert that Quinton Martin's statutory rights under the Act were violated when officers handcuffed him while his mother yelled at officers that Quinton was autistic. The Plaintiffs' claim appears to be that Quinton's ADA rights were violated because the defendant officers were not properly trained to deal with mentally disabled individuals in such circumstances. Judge Springmann addressed this claim, and dismissed it, in her previous order:

> The pleaded factual content does not describe the particular role of the State Defendants in the treatment of Quinton on August 22, 2017. The Complaint, which contains only a conclusory allegation that officer[s] were not properly trained, is insufficient to state a claim. *Cf. McCauley v. City of Chi.*, 671 F.3d 611, 617 (7th Cir. 2011) (finding that "[m]any of the alleged 'facts,'" such as the claim that the city had "an unwritten custom, practice and policy to afford lesser protection or none at all to victims of domestic violence" were "actually legal conclusions or elements of the cause of action, which may be disregarded on a motion to dismiss"). The ADA claim will be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

Opinion and Order (ECF No. 26), p. 6. Because Carroll and Dolby did not join in the other State Defendants' motion to dismiss, the ADA claim remains pending against them. But it fails to survive any longer. First, and most obviously, in the absence of evidence that either Carroll or Dolby were present during the events giving rise to the ADA claim, i.e., handcuffing Quinton and removing him from the home, they cannot be liable for any alleged violation. Second, the

Plaintiffs' ADA claim is legally groundless, as Judge Springmann observed, since it is nothing more than a "conclusory allegation that officers were not properly trained." The Plaintiffs fail to develop or argue this claim further in response to summary judgment, and thus it remains a conclusory allegation unsupported by any evidence. For these reasons, the Plaintiffs' ADA claim fails and Defendants Carroll and Dolby are entitled to summary judgment on that claim.

### IV. Unnamed, unserved defendants.

One final matter. The Plaintiffs named "Unknown Officers" as defendants in this case. Complaint, p. 1. In light of the Court's conclusions that all of the named Defendants, both individuals and entities, are entitled to summary judgment on all of the Plaintiffs' alleged constitutional and state tort claims, the only possible remaining claims in the case are the Plaintiffs' excessive force claims against these "Unknown Officers." The Plaintiffs, however, have never identified these unknown defendants and never attempted to amend their Complaint to name them (despite having represented to the Court that they intended to do so, as explained below).

"Under federal law, a plaintiff may name a fictitious defendant and utilize discovery to learn the defendant's proper identity. Although there is no prohibition on filing suit against unknown defendants, 'John Doe defendants must be identified and served within 120 days of the commencement of the action against them.'" *Mancini v. City of Indianapolis*, No. 16-CV-2048, 2018 WL 4680188, at *8 (S.D. Ind. Sept. 28, 2018) (quoting *Aviles v. Village of Bedford Park*, 160 F.R.D. 565, 567 (N.D. Ill. 1995) and citing Fed.R.Civ.P. 4(m) ("If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action

without prejudice as to that defendant. . . .")); *see Seay v. City of Indianapolis*, No. 18-CV-161, 2020 WL 6710799, at *4 (S.D. Ind. Nov. 16, 2020) ("Under federal law, a plaintiff may name a fictitious defendant and utilize discovery to learn the defendant's proper identity.") (citing *Mancini*, WL 4680188).[11] Once a plaintiff identifies the proper defendants, she must timely amend her complaint to add those defendants. The present case has been pending for two and a half years and the parties engaged in a long discovery phase (during which the Plaintiffs filed numerous discovery requests), but the Plaintiffs have not identified any additional defendants by name. They attempted to amend their Complaint at one point, as discussed below, but even then their proposed Amended Complaint did not identify any of the "Unknown Officers."

The Plaintiffs' failure to identify and serve the "Unknown Officers" is grounds for dismissal of those claims pursuant to Federal Rule of Civil Procedure 41. *Goings v. Stolworthy*, No. 16-CV-489, 2019 WL 3852708, at *10 (S.D. Ill. Aug. 16, 2019), reconsideration denied sub nom. *Goings v. Baldwin*, No. 16-CV-489, 2019 WL 4691040 (S.D. Ill. Sept. 26, 2019), and appeal dismissed, No. 19-2940, 2020 WL 1580514 (7th Cir. Feb. 13, 2020), and appeal dismissed, No. 19-2940, 2020 WL 1580514 (7th Cir. Feb. 13, 2020) ("Goings also named unknown parties in the operative Complaint. As of the date of this Order, Goings has neither identified those unknown parties [n]or filed an amended complaint naming those parties . . . . As such, pursuant to Federal Rule of Civil Procedure 41, they are dismissed with prejudice for failure to prosecute."); *Bentz v. Kirk*, No. 18-CV-18, 2019 WL 5907182, at *2 (S.D. Ill. Oct. 23,

---

[11] Rule 4(m) was since amended and now mandates 90 days for service. *See* Fed. R. Civ. P. 4(m) advisory committee's notes to 2015 amendment (noting that the period for service shortened to 90 days from 120 days, effective December 1, 2015). The 90-day period, obviously, was applicable in this case.

2019), report and recommendation adopted, No. 18-CV-18, 2019 WL 5893535 (S.D. Ill. Nov.

12, 2019) (dismissing claims with prejudice because "Plaintiff . . . failed to timely seek leave to

amend his complaint to identify the unknown defendants."); *Rico v. Knauer, et al*., No.

20-CV-415, 2020 WL 7698594, at *8 (S.D. Ill. Dec. 28, 2020) ("Plaintiff is responsible for

conducting discovery (informal or formal) aimed at identifying the remaining unknown "John

Does" #1 and #2, in accordance with the discovery order that will be entered by the Court. Once

the names of the unknown Defendants are discovered, Plaintiff must file a motion to substitute

the newly identified Defendants in place of the generic designations in the case caption and

throughout the Complaint."); *Spivey v. Love*, No. 11-CV-00327, 2012 WL 5268656, at *7 (S.D.

Ill. Sept. 14, 2012), report and recommendation adopted, No. 11-CV-327, 2012 WL 5268635

(S.D. Ill. Oct. 23, 2012) (John Doe defendant "dismissed from this action in accord with Rule

4(m) and pursuant to Rule 41(b)."); *Scott v. Hern*, 216 F.3d 897, 912 (10th Cir. 2000) (affirming

dismissal under Rule 4(m) where plaintiffs failed to pursue authorized discovery against

unnamed defendants); *Figueroa v. Rivera*, 147 F.3d 77, 82-83 (1st Cir. 1998) (affirming Rule

4(m) dismissal of John Doe defendants after seventeen months during which plaintiffs made no

effort to identify them); *Hormann v. City of Zanesville*, No. 19-CV-1329, 2020 WL 5701912, at

*4 (S.D. Ohio Sept. 24, 2020) ("Since filing this action more than 15 months ago, Mr. Hormann

has failed to effect service over John Does #1-4. Fed. R. Civ. P. 4(m). Mr. Hormann also failed

to amend his Complaint to identify John Does #1-4, despite the incredible ease of ascertaining

their identities. *Cf. Choice v. Coleman*, No. 08-11762, 2009 WL 2222589, at *2 (E.D. Mich. July

23, 2009) (reiterating a plaintiff's 'duty of making reasonable efforts to identify, serve, and join

the actual parties') (citing *Stratton v. City of Boston*, 731 F. Supp. 42, 45 (D. Mass. 1989)). Upon

review of the docket, it appears that Mr. Hormann has abandoned his claims, particularly with

respect to John Does #1-4. As a result, Mr. Hormann's claims against John Does #1-4 are

DISMISSED WITH PREJUDICE pursuant to Rule 41(b).") (capitalization in original).

In *Tolentino v. Lashbrook*, No. 15-CV-196, 2018 WL 2047902, at *1 (S.D. Ill. May 2,

2018), the district court dismissed plaintiff's claims against unknown parties, noting that "[o]n

June 23, 2015, the Court entered a Scheduling and Discovery Order giving Plaintiff until August

28, 2015 to seek leave to amend his Complaint to name the unknown parties . . . . As of the date

of this Order, Plaintiff has failed to identify the unknown tactical officers. Accordingly, the Court

finds that Plaintiff has failed to prosecute his case against the unknown tactical officers and they

are DISMISSED WITH PREJUDICE pursuant to Rule 41(b) of the Federal Rules of Civil

procedure." The same circumstances exist in the present case. At the preliminary pretrial

conference (Rule 16 conference) in this case held on July 26, 2018, the Court set a discovery

deadline of June 28, 2019, and a deadline for leave to amend and to join parties of October 25,

2018. Court Order (ECF No. 25). It wasn't until November 22, 2019, more than a year after the

deadline, that the Plaintiffs moved for leave to amend their Complaint.[12] In their motion for leave

to amend, the Plaintiffs represented that "they need to amend the complaint in order to identify

previously unknown officers and to add a 'conflict of interest' claim against the Noble County

prosecutor who prepared the search warrant." Opinion and Order (ECF No. 135), p. 4. Magistrate

---

[12] To be precise, the Plaintiffs filed an Amended Complaint on November 22, 2019 (ECF No. 130). Magistrate Judge Collins directed the Clerk to docket the filing as a *proposed* Amended Complaint and instructed Plaintiffs "to file a motion, on or before 12/18/2019, seeking the Court's leave to amend their complaint and showing why, per Federal Rule of Civil Procedure 16(b)(4), good cause exists for modifying the Court's scheduling order." Court Order (ECF No. 131). The Plaintiffs filed their motion for leave to amend on December 18, 2019, as instructed (ECF No. 134).

Judge Collins denied the Plaintiffs' motion, concluding that it was inexcusably untimely: "[T]his is not a matter where Plaintiffs are being penalized for failing to comply with confusing legal minutia. Plaintiffs were made aware of the need to set a deadline, given feedback on their choice of the deadline, and were twice made aware of the procedure to amend a complaint required after the deadline passed." *Id.*, p. 8. Finally, the Court notes that even in their proposed Amended Complaint, the Plaintiffs did *not* identify their "Unknown Officers." The closest it comes to doing so is when Denice Martin states that "through discovery, depositions, going to the police department, receiving my gun back and seeing the officers again, I was able to identify certain officers and their identity who played key parts in the August 22, 2017 incident. I know for sure that it was Allen Co. Sheriff, Indiana State Police, Fort Wayne Police, several unmarked cars and a tank shape vehicle at my house on August 22, 2017." Proposed Amended Complaint (ECF No. 130), ¶ 11. These, of course, were all named defendants from the beginning and so the Plaintiffs' proposed amendment did not attempt to identify the "Unknown Officers." In fact, the main purpose and intent of the Plaintiffs' motion for leave to amend was to add a *plaintiff* to the case (Anthony Martin, who is Denice Martin's brother), *not* to identify or add defendants, as Magistrate Judge Collins noted in her order. Opinion and Order, generally.[13] Accordingly, the Plaintiffs' have failed to pursue or prosecute their purported claims against "Unknown Officers" and those claims shall be dismissed pursuant to Rule 41.

---

[13] In fact, as Magistrate Judge Collins noted, "Plaintiffs' proposed amended complaint substantially mirrors their initial complaint except in the following relevant respects: (1) the proposed complaint is signed by Anthony Martin, in addition to Denice Martin and Quinton Martin, (2) Plaintiffs now allege that Denice Martin is able to identify FWPD officers who were involved in serving the warrant, and (3) Plaintiffs seek to add a claim against . . . the Noble County prosecutor who allegedly prepared the search warrant at issue." Opinion and Order (ECF No. 135), p. 4.

Finally, the Court notes that "[i]f the claims being dismissed without prejudice for failure to comply with Rule 4(m) will be time-barred by statutes of limitations upon refiling, the dismissal should be treated as a dismissal with prejudice under Rule 41(b)." *Thomas v. Gulotta*, No. 15-CV-00435, 2018 WL 2750230, at *2 (M.D. La. June 7, 2018) (quoting *Sealed Appellant v. Sealed Appellee*, 452 F.3d 415, at 417 (5th Cir. 2006)); *see also*, *Combs v. Shah*, No. 13-CV-181, 2015 WL 3666082, at *4 (S.D. Ill. June 12, 2015) ("Despite providing him ample time, Combs has been unable to file an amended complaint properly naming John Does # 1 and # 3. Additionally, the Court notes that the applicable two-year statute of limitations for this action has run. As such, Combs's ability to sufficiently amend his complaint and name the John Does is unlikely. For these reasons, the Court concludes that Combs has failed to properly prosecute his case against John Does # 1 and # 3. Accordingly, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, Combs's claim against these unknown Defendants is dismissed with prejudice. *See Lucien v. Breweur*, 9 F.3d 26, 28 (7th Cir.1993) (dismissal is a 'feeble sanction' if it is without prejudice).").[14]

"A district court 'enjoys wide discretion' in considering whether dismissal is appropriate under Rule 41." *Doe v. Indiana Univ. Bd. of Trustees*, No. 19-CV-02204, 2020 WL 5106564, at *9 (S.D. Ind. Aug. 31, 2020) (quoting *Jack Gray Transport, Inc. v. AT&T Corp.*, 2017 WL 633848, at *1 (N.D. Ind. 2017)). "A district court may dismiss an action for failure to prosecute

---

[14] "Suits filed under 42 U.S.C. § 1983 borrow the statute of limitations for state personal injury claims, which in Indiana is two years." *Haynes v. Allen Cty. Police Dep't*, No. 20-CV-364, 2020 WL 7353777, at *1 (N.D. Ind. Dec. 15, 2020) (citing *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012)). Accordingly, the statute of limitations in this case expired on August 22, 2019, months before the Plaintiffs attempted to amend their Complaint.

under Rule 41(b) *sua sponte*, as part of its 'inherent power' to control its docket 'to achieve the orderly and expeditious disposition of cases.'" *Massey v. Alberson*, No. 16-CV-136, 2019 WL 176821, at *2 (N.D. Ind. Jan. 11, 2019) (citing *James v. McDonald's Corp.*, 417 F. 3d 672, 681 (7th Cir. 2005) (in turn quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)). In this instance, the Plaintiffs named "Unknown Officers" as defendants in their Complaint but have never identified them, moved to amend their Complaint to name them, or served them. The statute of limitations on those purported claims has expired. Accordingly, the Court exercises its discretion and the Plaintiffs' claims against "Unknown Officers" are dismissed with prejudice pursuant to Rule 41.

## CONCLUSION

The Court does not doubt that Plaintiffs Denice and Quinton Martin were traumatized when law enforcement officers entered their home at night, handcuffed them, and detained them outside of their home for several hours while officers conducted a search pursuant to a valid warrant. The Court also recognizes that the events of that evening were likely very disturbing to Quinton, given his disability. That said, their allegations and their responses in opposition to summary judgment fail to raise a disputed issue of material fact. The admissible evidence shows that the defendants–all of them–are entitled to summary judgment on all of the Plaintiffs' claims, and any purported or attempted claims against "Unknown Officers" must be dismissed pursuant to Rule 41. The Court has endeavored to liberally construe the Plaintiffs' Complaint to address all discernable claims it presents, but cannot "'assume the role of advocate for the *pro se* litigant' and may 'not rewrite a petition to include claims that were never presented.'" *See Thrower v. Allen ,et al*., No. 17-CV-50340, 2020 WL 7626732, at *1 (N.D. Ill. Dec. 22, 2020) (quoting

*Lewis v. Richards*, 107 F.3d 549, 554 (7th Cir. 1997) ("to survive summary judgment, the non-movant 'must present some evidence, beyond the bare allegations of [her] complaint.'"). "[I]f it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. *See Celotex*, 477 U.S. at 322; *Ziliak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003).

For the reasons explained above, the motions for summary judgment filed by Defendants Dunafin, Harp, Hutsell, and Noble County Sheriff's Department (ECF No. 138), Defendant Allen County Sheriff's Department (ECF No. 140), and Defendants Carroll, Culler, Dolby, Indiana State Police Department, Noble County Prosecutor's Office, and Petro (ECF No. 147) are GRANTED. The motions to strike filed by the County Defendants (ECF No. 175 and 176) are GRANTED. The Plaintiffs' purported claims against "Unknown Officers" are DISMISSED WITH PREJUDICE pursuant to Rule 41.

Date: January 4, 2021.

  /s/   William C. Lee  
William C. Lee, Judge  
U.S. District Court  
Northern District of Indiana